686 N.W.2d 273 (2004)
262 Mich.App. 571
Dallas HAYLEY and Christine Hayley, Plaintiffs-Appellees,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellant.
Docket No. 245233.
Court of Appeals of Michigan.
Submitted May 11, 2004, at Detroit.
Decided June 22, 2004, at 9:15 a.m.
Released for Publication September 1, 2004.
*274 Jo Robin Davis, P.L.L.C. (by Jo Robin Davis), and (Donald M. Fulkerson, of counsel), Farmington Hills and Westland, for the plaintiffs.
Garan Lucow Miller, P.C. (by Megan K. Cavanagh and Frederick B. Plumb), Detroit, for the defendant.
Before: SCHUETTE, P.J., and BANDSTRA and COOPER, JJ.
BANDSTRA, J.
Defendant Allstate Insurance Company appeals by leave granted the trial court's denial of its motion for summary disposition of all plaintiffs Dallas and Christine Hayleys' claims pursuant to MCR 2.116(C)(8) and MCR 2.116(C)(10). We reverse.

I. Facts
Plaintiffs' home sustained water damage in 1999 because of ice damming on their roof. The damage consisted primarily of flooding of the carpeting in a bedroom and the family room. Plaintiffs submitted a claim for this damage to defendant, their homeowner's insurer, which defendant paid. The damage was repaired and, at the time, plaintiffs believed the problem had been resolved. Subsequently, in 2000, plaintiffs discovered a toxic form of mold in their home when they removed suspended ceiling tiles in their utility room. Plaintiffs discovered that mold was growing on approximately one-fourth of the unfinished drywall ceiling above the suspended tiles. Clean Air Management, Inc., investigated the problem and advised plaintiffs that the mold was stachybotrys, a toxic form of mold. Plaintiffs alleged that the mold was caused by the 1999 water damage and requested that defendant reopen the 1999 claim to cover the cost of its removal. However, defendant refused to pay for any claim associated with the mold discovered in 2000.
Plaintiffs thereafter brought this action, alleging claims for breach of contract, violation of the Uniform Trade Practices Act *275 (UTPA),[1] intentional infliction of emotional distress, gross negligence, and breach of a duty of good faith. The parties presented conflicting evidence in the trial court regarding the cause of the mold. However, defendant conceded at oral arguments that, for the purpose of this appeal, the mold was caused by the 1999 ice damming. Both plaintiffs allege that they have experienced physical symptoms and ailments related to their exposure to the mold, forcing them to move out of their home in 2001. Defendant moved for summary disposition of all claims, the denial of which led to this appeal.

II. Legal Analysis
We review de novo a trial court's determination regarding a motion for summary disposition.[2] A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim on the basis of the pleadings alone and should be granted only if the factual development of the claim could not justify recovery.[3] A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim.[4] "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), we consider the affidavits, pleadings, depositions, admissions, or any other documentary evidence submitted in the light most favorable to the nonmoving party to decide whether a genuine issue of material fact exists."[5] Summary disposition is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[6]

A. Policy Exclusion
Defendant contends that the trial court erroneously denied its motion for summary disposition regarding plaintiffs' breach of contract claim, as defendant's policy specifically excludes coverage for mold damage. We agree.
This Court summarized the guidelines for enforcing exclusionary clauses in insurance policies as follows:
Exclusionary clauses in insurance policies are strictly construed in favor of the insured. Coverage under a policy is lost if any exclusion in the policy applies to an insured's particular claims. Clear and specific exclusions must be given effect because an insurance company cannot be liable for a risk it did not assume.[7]
When reviewing an exclusionary clause, we read the contract as a whole to effectuate the overall intent of the parties.[8] Where the language is clear and unambiguous, the insurance policy must be enforced as written.[9]
Defendant's policy contains the following exclusion from coverage:
Losses We Do Not Cover Under Coverages A and B:

*276 We do not cover loss to the property described in Coverage ADwelling Protection or Coverage BOther Structures Protection consisting of or caused by:
* * *
In addition, we do not cover loss consisting of or caused by any of the following:
15. a) ...
* * *
d) rust or other corrosion, mold, wet or dry rot; ...
* * *
23. We do not cover loss to covered property described in Coverage A Dwelling Protection or Coverage B Other Structures Protection when:
a) there are two or more causes of loss to the covered property; and
b) the predominant cause(s) of loss is (are) excluded under Losses We Do Not Cover, items 1 through 22 above.
We agree with defendant that ¶ 15(d) clearly excludes both losses caused by mold and losses consisting of mold damage. Further, contrary to plaintiffs' arguments, ¶ 23 does nothing to extend coverage to such losses. To the contrary, ¶ 23 further identifies losses that "[w]e do not cover" in a limiting fashion and that paragraph cannot reasonably be construed to an opposite effect, i.e., to somehow extend coverage to losses not otherwise covered. Further, the paragraph only applies where "there are two or more causes of loss." Here, there is only one cause of loss, the water backup that resulted from the ice dam. Defendant paid for covered losses resulting from that cause to the extent they were not excluded from coverage, as mold is. Finally, we disagree with the dissent's conclusion that Steven Bell admitted in his deposition that defendant would pay for mold remediation if caused by a covered water backup. Instead, Bell only stated that mold remediation might occur during the process of remediating some other loss that was covered by the policy. Such incidental mold remediation did not occur here as the water damage was corrected, at defendant's expense, before the mold problem developed.

B. Uniform Trade Practices Act
Defendant further argues that the trial court should have dismissed plaintiffs' claim under the UTPA, wherein plaintiffs requested an award of twelve percent penalty interest pursuant to MCL 500.2006 on the basis that defendant had unreasonably denied their claim. In light of our conclusion that defendant appropriately rejected plaintiffs' claim, we agree.

C. Intentional Infliction of Emotional Distress
Finally, defendant contends that the trial court erred in denying summary disposition of plaintiffs' claim for intentional infliction of emotional distress. We agree.
To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress."[10] The conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[11] It is for the trial court to *277 initially determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.[12] But where reasonable individuals may differ, it is for the jury to determine if the conduct was so extreme and outrageous as to permit recovery.[13]
The failure to pay a contractual obligation or insurance benefits does not amount to outrageous conduct, even if it is done in bad faith or wilfully.[14] In a contractual setting, a tort claim must be based instead on the breach of a duty distinct from the contract.[15] Plaintiffs failed to sufficiently allege or present evidence that defendant did anything more than refuse to pay their claim. Contrary to plaintiffs' suggestion, defendant did not force them to remain in their home while they disputed the denial of their claim. Nor have plaintiffs shown that the handling of their claim involved extreme and outrageous conduct on the part of defendant's agents. Therefore, the trial court improperly denied defendant's motion for summary disposition of plaintiffs' intentional infliction of emotional distress claim pursuant to MCR 2.116(C)(10).
Plaintiffs concede that defendant is entitled to summary disposition regarding their claims of gross negligence and breach of a duty of good faith. Therefore, we dismiss those claims without further review.
We reverse and remand for entry of an order granting defendant summary disposition of all plaintiffs' claims. We do not retain jurisdiction.
SCHUETTE, P.J., concurred.
COOPER, J. (dissenting).
I respectfully dissent from the opinion of my colleagues. The plain language of Allstate's insurance policy provides for coverage for an otherwise excluded loss if the predominant source of the loss was a covered event. I would, therefore, affirm the trial court's denial of defendant's motion for summary disposition regarding plaintiffs' breach of contract and Uniform Trade Practices Act (UTPA) claims.

I. Policy Exclusion
I also agree with defendant that ¶ 15(d) purports to exclude both losses caused by mold and losses consisting of mold damage. However, ¶ 23 of the policy recognizes that there may be more than one cause of a loss to covered property. Under ¶ 23, if there is more than one cause contributing to the loss, coverage is still available so long as the predominant cause of the loss is not excluded under the policy.[1]
Paragraph 23 appears to embody the efficient proximate cause rule, or the theory of dual or concurrent causation, as it is known in Michigan. Michigan has no *278 precedential authority expressly adopting or denying the theory of dual or concurrent causation. As the Allstate policy expressly provides for governance under this doctrine, it is unnecessary to determine whether Michigan must adopt the doctrine as a matter of policy to dispose of this case. For purposes of interpreting the contract, it is necessary to discuss the doctrine.
In an unpublished opinion, a panel of this Court declined to adopt the theory of dual or concurrent causation where the exclusionary provision at issue was an "anticoncurrent causation" clause.[2] The policy in Dahlke v. Home Owners Ins Co excluded loss "caused directly or indirectly by any of the following, whether or not any other cause or event contributes concurrently or in any sequence to the loss: ... mold...."[3] In Vanguard Ins. Co. v. Clarke,[4] our Supreme Court declined to apply the doctrine to "to nullify an unambiguous insurance policy exclusion...."[5]Vanguard is similarly uninstructive, as the Court was silent regarding the applicability of the doctrine to an insurance policy containing an express concurrent causation provision.
We must, therefore, look to other jurisdictions for guidance.[6] Illinois, the state in which this insurance policy originated, provides no direction to interpreting the current insurance policy as it has questioned the introduction of tort principles of causation into the interpretation of insurance policies.[7] The clearest interpretation of this rule comes from the Alaska Supreme Court.
"When a loss is sustained by a sequence or concurrence of at least two causes, one covered under [an insurance] policy and the other excluded under the policy, the cause setting the chain of events in motion is the cause to which the loss is attributed...." Other courts have defined efficient proximate cause to mean the predominant cause, rather than the first in time.[8]
The determination of the cause of the loss is a question of fact.[9]
*279 Paragraph 23 purports to provide coverage, even for specifically excluded losses, where the predominant cause of loss is a covered event. The majority inaccurately interprets ¶ 23 and the testimony of Steven Bell. Mr. Bell admitted in his deposition that defendant would pay for mold remediation if caused by a covered water loss.[10] Furthermore, defendant's appellate counsel admitted at oral arguments that, for purposes of this appeal, the mold was caused by the covered 1999 ice damming. Accordingly, I would find that the trial court properly denied defendant's motion for summary disposition.

II. Uniform Trade Practices Act
I also disagree with the majority's decision regarding plaintiffs' claim under the UTPA. In light of the conclusion that the Allstate policy clearly covers mold loss incidental to a primary covered loss, and in light of Mr. Bell's admission of coverage, in addition to plaintiffs' evidence linking the mold to the 1999 ice damming condition, I believe there is a genuine issue of material fact concerning whether plaintiffs' claim was reasonably in dispute. Therefore, I would find that the trial court properly denied summary disposition regarding this claim.
Accordingly, I would affirm the trial court's denial of defendant's motion for summary disposition with regard to plaintiffs' breach of contract and UTPA claims and reverse the trial court's denial with regard to plaintiffs' claim of intentional infliction of emotional distress.
NOTES
[1] MCL 500.2001 et seq.
[2] Beaudrie v. Henderson, 465 Mich. 124, 129, 631 N.W.2d 308 (2001).
[3] Id. at 129-130, 631 N.W.2d 308.
[4] Auto-Owners Ins. Co. v. Allied Adjusters & Appraisers, Inc., 238 Mich.App. 394, 397, 605 N.W.2d 685 (1999).
[5] Singer v. American States Ins., 245 Mich. App. 370, 374, 631 N.W.2d 34 (2001); MCR 2.116(G)(5).
[6] Auto-Owners, supra at 397, 605 N.W.2d 685.
[7] Century Surety Co. v. Charron, 230 Mich. App. 79, 83, 583 N.W.2d 486 (1998).
[8] Pacific Employers Ins. Co. v. Michigan Mut. Ins. Co., 452 Mich. 218, 224, 549 N.W.2d 872 (1996).
[9] Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel, 460 Mich. 558, 566, 596 N.W.2d 915 (1999).
[10] Graham v. Ford, 237 Mich.App. 670, 674, 604 N.W.2d 713 (1999).
[11] Id.
[12] Teadt v. Lutheran Church Missouri Synod, 237 Mich.App. 567, 582, 603 N.W.2d 816 (1999).
[13] Id.
[14] Taylor v. Blue Cross & Blue Shield of Michigan, 205 Mich.App. 644, 657, 517 N.W.2d 864 (1994).
[15] Runions v. Auto-Owners Ins. Co., 197 Mich.App. 105, 109, 495 N.W.2d 166 (1992), quoting Roberts v. Auto-Owners Ins. Co., 422 Mich. 594, 603, 374 N.W.2d 905 (1985).
[1] Compare Sunshine Motors, Inc. v. New Hampshire Ins. Co., 209 Mich.App. 58, 59-60, 530 N.W.2d 120 (1995) (coverage for flood damage was completely barred where insurance policy expressly excluded coverage for losses caused both directly, and indirectly, by flooding).
[2] Dahlke v. Home Owners Ins Co, unpublished opinion per curiam of the Court of Appeals, issued December 23, 2003 (Docket No. 239128), slip op at 4.
[3] Id. at 2.
[4] Vanguard Ins. Co. v. Clarke, 438 Mich. 463, 475 N.W.2d 48 (1991).
[5] Id. at 466, 475 N.W.2d 48.
[6] For examples of other states that have adopted the efficient proximate cause rule, see State Farm Fire & Cas. Co. v. Von Der Lieth, 54 Cal.3d 1123, 2 Cal.Rptr.2d 183, 820 P.2d 285 (1991); Frontis v. Milwaukee Ins. Co., 156 Conn. 492, 242 A.2d 749 (1968); Chase v. State Farm Fire & Cas. Co., 780 A.2d 1123 (D.C.App., 2001); Jussim v. Massachusetts Bay Ins. Co., 415 Mass. 24, 610 N.E.2d 954 (1993); Fawcett House, Inc. v. Great Central Ins. Co., 280 Minn. 325, 159 N.W.2d 268 (1968); Toumayan v. State Farm Fire & Cas. Co., 970 S.W.2d 822 (Mo.App.,1998); Western Nat'l Mut. Ins. Co. v. Univ. of North Dakota, 2002 ND 63, 643 N.W.2d 4 (ND, 2002); Alf v. State Farm Fire & Cas. Co., 850 P.2d 1272 (Utah, 1993); Allstate Ins. Co. v. Raynor, 143 Wash.2d 469, 21 P.3d 707 (2001).
[7] Allstate Ins. Co. v. Smiley, 276 Ill.App.3d 971, 213 Ill.Dec. 698, 659 N.E.2d 1345, 1354 (1995).
[8] C. P. v. Allstate Ins. Co., 996 P.2d 1216, 1228 (Alas. 2000), in part quoting State Farm Fire & Cas. Co. v. Bongen, 925 P.2d 1042, 1043 n. 1 (Alas.1996). See also 7 Couch on Insurance, 3d, § 101.46, pp. 101-140 to 101-141, § 101.57, pp. 101-152 to 101-153.
[9] Von Der Lieth, supra at 1132, 2 Cal.Rptr.2d 183, 820 P.2d 285, citing Garvey v. State Farm Fire & Cas. Co., 48 Cal.3d 395, 257 Cal.Rptr. 292, 770 P.2d 704 (1989).
[10] A fair reading of the following testimony from Mr. Bell's deposition indicates that Mr. Bell did in fact admit that defendant would pay for the remediation of mold caused by a covered loss.

Q. A house catches on fire, the firefighters go in to suppress the fire and water ends up in the house and it's not initially cleaned up and mold results, is it covered?
A. The initial fire loss is covered.
Q. What about the resulting water loss?
A. The water loss is part of the fire damage; therefore, it's covered also.
Q. Okay. And if it happens to be mold resulting from that, is it covered?
* * *
A. It depends on whether it's part of the actual water loss and is taken care of.
Q. So sometimes Allstate Insurance Company, under these homeowners policies will, in fact, pay for the remediation of mold?
A. Typically, it's part of the actual structure damages.
Q. Okay. But there are times when mold remediation is paid by Allstate under a homeowners policy?
A. Yes. [Deposition of Steven Bell, April 3, 2002, pp. 33-34.]