# STATE OF MICHIGAN

# COURT OF APPEALS

BETTINA WINKLER, by her next friends,
HELGA DAHM WINKLER and MARVIN
WINKLER,

        Plaintiff-Appellee,

v

MARIST FATHERS OF DETROIT, INC., doing
business as NOTRE DAME PREPARATORY
HIGH SCHOOL AND MARIST ACADEMY,

        Defendant-Appellant.

FOR PUBLICATION
September 21, 2017
9:00 a.m.

No. 323511
Oakland Circuit Court
LC No. 2014-141112-CZ

ON REMAND

Before: SAWYER, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

This case returns to us on remand from the Michigan Supreme Court. In this action alleging discrimination under the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, this panel, relying on *Dlaikan v Roodbeen*, 206 Mich App 591; 522 NW2d 719 (1994), previously held that the trial court "does not have subject-matter jurisdiction to review plaintiff's claim based on constitutional protections afforded by the First Amendment." Therefore, this Court reversed the trial court's order denying defendant's motion for summary disposition. *Winkler v Marist Fathers of Detroit, Inc*, unpublished opinion per curiam of the Court of Appeals, issued November 12, 2015 (Docket No. 323511); slip op at 5. In an opinion decided June 27, 2017, the Michigan Supreme Court reversed this Court's decision. The Michigan Supreme Court explained:

> While *Dlaikan* and some other decisions have characterized the ecclesiastical abstention doctrine as depriving civil courts of subject matter jurisdiction, it is clear from the doctrine's origins and operation that this is not so. The ecclesiastical abstention doctrine may affect how a civil court exercises its subject matter jurisdiction over a given claim; it does not divest a court of such jurisdiction altogether. To the extent *Dlaikan* and other decisions are inconsistent with this understanding of the doctrine, they are overruled. [*Winkler v Marist*

-1-

*Fathers of Detroit, Inc*, ___ Mich ___, ___; ___ NW2d ___ (2017) (Docket No. 152889); slip op at 2.]

The Michigan Supreme Court remanded the case to this Court to consider defendant's alternative argument that it was entitled to summary disposition because the PWDCRA does not apply to its school. *Winkler*, ___ Mich at ___; slip op at 15-16.

## I. FACTS AND PROCEDURAL HISTORY

This Court's earlier opinion recites the following factual history underlying this case:

> Notre Dame Marist Academy (Marist) is a private, Catholic middle school in Pontiac, Michigan. Notre Dame Preparatory School (Notre Dame) is a private, Catholic high school in Pontiac, Michigan. Together, Marist and Notre Dame constitute the defendant in this case, Marist Fathers of Detroit, Inc, [doing business as] Notre Dame Preparatory High School and Marist Academy. Plaintiff, Bettina Winkler, enrolled in Marist as both a seventh-grade and eighth-grade student. According to plaintiff's complaint, she was "assured on numerous occasions that if she enrolled at Marist for 7th and 8th grade, she would be guaranteed placement in Notre Dame Prep for High School 9th grade." However, plaintiff was not granted admission to Notre Dame. Approximately two months after being denied admission to Notre Dame, plaintiff was diagnosed with certain learning disabilities.[1] Thereafter, this lawsuit was filed, alleging in pertinent part discrimination under the Persons With Disabilities Civil Rights Act (PWDCRA), MCL 37.1401 *et seq.* Plaintiff alleged that despite being "long aware that [she] had a learning disability," defendant denied her admission to Notre Dame and "consistently relied upon her learning disability . . . as a justification" for doing so. [*Winkler*, unpub op at 1-2 (footnote added).]

Procedurally, in the trial court, plaintiff's parents, Helga Dahm Winkler and Marvin Winkler, filed a complaint on behalf of their daughter, alleging disability discrimination under the PWDCRA, violation of Michigan's Consumer Protection Act (MCPA), MCL 445.901 *et seq.*, and claims of tortious fraud and misrepresentation.[2] Defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(4) and (C)(10). Claiming summary disposition was warranted pursuant to MCR 2.116(C)(4), defendant focused primarily on this Court's prior ruling in *Dlaikan*, asserting the absence of subject matter jurisdiction for civil courts over a religious school's admissions decisions pursuant to the First Amendment of the United States Constitution. Defendant also sought summary disposition under MCR 2.116(C)(10), arguing that it was not aware of plaintiff's disability at the time she was denied admission to the high

---

[1] According to the complaint, plaintiff was diagnosed with moderate dyslexia and dyscalculia on March 20, 2014, along with "a specific learning disability in math, Attention Deficit/Hyperactivity Disorder (ADHD), and an adjustment disorder with anxiety."

[2] Plaintiff voluntarily dismissed her MCPA, fraud, and misrepresentation claims.

school, and that it had provided accommodations to plaintiff after learning of plaintiff's disability. Plaintiff responded to the motion, asserting, in relevant part, that defendant's status as a religious school did not exempt it from being subject to the PWDCRA. Plaintiff further asserted that defendant was on notice in 2012 of plaintiff's attention deficit hyperactivity disorder (ADHD) diagnosis and suspected learning disability. Plaintiff also argued that *Dlaikan* was not applicable and factually distinguishable from this case. In reply, defendant asserted that as a private school, it did not fall within the ambit of the PWDCRA.

The trial court issued an opinion and order denying defendant's motion for summary disposition. As relevant to the issue on remand, the trial court denied defendant's motion for summary disposition under MCR 2.116(C)(10), explaining, in pertinent part, as follows:

> While the [PWDCRA] does not expressly address religious schools, it is basic that under rules of statutory construction, words and phrases are to be construed according to the ordinary rules of grammar and dictionary meanings. Here it appears that Notre Dame Prep High School is a public or private institution or School system; Defendant fails to establish that the PWDCRA does not apply to the Notre Dame Prep High School given [the applicable] definitions in the act. [Citations omitted.]

Defendant filed an application for leave to appeal in this Court, which was granted.[3] On appeal to this Court, as relevant to this remand, defendant argued that the PWDCRA is not applicable to religious schools. Plaintiff responded that the PWDCRA was clearly applicable to religious schools given the definition of an educational institution in MCL 37.1401, demonstrating the Legislature's decision to not exempt such schools.[4] As noted above, this Court reversed the trial court's ruling on the basis that the trial court lacked subject-matter jurisdiction where defendant's actions in denying plaintiff admission to its school were protected by the First Amendment. Accordingly, this Court did not reach the issue whether defendant was an "educational institution" as contemplated by MCL 37.1401.

Plaintiff subsequently filed an application for leave to appeal in the Michigan Supreme Court, and following the submission of briefs and oral argument, the Michigan Supreme Court issued an opinion holding, in pertinent part, as follows:

---

[3] *Winkler v Marist Fathers of Detroit, Inc.*, unpublished order of the Court of Appeals, entered December 18, 2014 (Docket No. 323511).

[4] On appeal, plaintiff's position was supported by an amicus curiae brief filed by Michigan Protection & Advocacy Service, Inc. In concurrence with plaintiff's position that the PWDCRA was applicable to religious schools, amicus curiae focused on the plain language of MCL 37.1401, asserting that the wording of the statute did not contain any limitations or exceptions to the word "private." It further asserted that defendant's focus on the language or content of unrelated statutes was irrelevant because the other statutes were not *in pari materia* with MCL 37.1401.

The existence of subject matter jurisdiction turns not on the particular facts of the matter before the court, but on its general legal classification. By contrast, application of the ecclesiastical abstention doctrine is not determined by reference to the category or class of case the plaintiff has stated. . . . What matters instead is whether the actual adjudication of a particular legal claim would require the resolution of ecclesiastical questions; if so, the court must abstain from resolving those questions itself, defer to the religious entity's resolution of such questions, and adjudicate the claim accordingly. The doctrine, in short, requires a case-specific inquiry that informs how a court must adjudicate certain claims within its subject matter jurisdiction; it does not determine whether the court has such jurisdiction in the first place. The instant panel thus erred, albeit understandably, in deeming summary disposition warranted under MCR 2.116(C)(4), and we reverse that determination. [*Winkler*, ___ Mich at ___; slip op at 12-13 (citations omitted).]

The Michigan Supreme Court noted that defendant, even without disputing "this general understanding of the ecclesiastical abstention doctrine," also argued that plaintiff's claim of an alleged violation of the PWDCRA could not survive application of the doctrine. *Id*. at 13. Specifically, defendant argued that despite the ability of a civil court to exercise jurisdiction of plaintiff's "challenge to its admissions decision, the court cannot disrupt that decision or award the plaintiff relief as to it without impermissibly passing judgment on ecclesiastical matters." *Id*. Defendant's argument was premised on "an analogy between the students of its high school and the clergy and membership of a church." *Id*. at 14. Arguing that church authorities maintain the final say in matters of expulsion or excommunication from the church and that civil courts cannot interfere in such decisions, defendant contended that "[a] parochial school's admission or expulsion of a student is no different . . . given the 'integral part' such a school can play in furthering 'the religious mission of the Catholic Church' and in 'transmitting the Catholic faith to the next generation.' " *Id*. (citations omitted).

In response, the Michigan Supreme Court stated, in pertinent part:

Whether this analogy is generally sound, and whether it holds up in the instant case (or in *Dlaikan*, for that matter), we see no reason to reach at this time. It is for the circuit court, in the first instance, to determine whether and to what extent the adjudication of the legal and factual issues presented by the plaintiff's claim would require the resolution of ecclesiastical questions (and thus deference to any answers the church has provided to those questions). It is enough for our purposes here to clarify that, contrary to the suggestion of *Dlaikan* and other decisions, the circuit court does, in fact, have subject matter jurisdiction over the plaintiff's claim, and the judicial power to consider it and dispose of it in a manner consistent with the guarantees of the First Amendment. Simply put, to the extent that application of the ecclesiastical abstention doctrine might still prove fatal to the plaintiff's claim for relief under the PWDCRA, it will not be for lack of "jurisdiction of the subject matter" under MCR 2.116(C)(4). [*Winkler*, ___ Mich at ___; slip op at 14-15 (footnote omitted).]

Consequently, the Michigan Supreme Court reversed this Court's judgment regarding defendant's entitlement to summary disposition of the jurisdictional issue pursuant to MCR 2.116(C)(4). With reference to the issue currently on remand before this Court, our Supreme Court stated:

> As to the defendant's entitlement to summary disposition under MCR 2.116(C)(10), the Court of Appeals previously declined to reach those arguments on which the circuit court had not yet ruled; we see no reason to disrupt that decision. The circuit court did, however, reject the defendant's argument that the PWDCRA does not apply to its school, a ruling which the defendant challenged on appeal but which the panel saw no need to review given its jurisdictional determination. Having reversed the jurisdictional determination, we remand this matter to the Court of Appeals for consideration of that challenge. [*Winkler*, ___ Mich at ___; slip op at 15-16.]

## II. ANALYSIS

The issue on remand – whether the PWDCRA is applicable to defendant, a religious school – is significant, yet narrow in focus. On remand, we are not instructed to evaluate whether defendant violated the PWDCRA with regard to its dealings with plaintiff. Rather, the Michigan Supreme Court has directed us to address only the first step in analyzing plaintiff's claim—whether defendant's school qualifies as an "educational institution" as that term is defined in the PWDCRA, MCL 37.1401.

The starting point in our analysis is the statutory language at issue, and our analysis is guided by the rules of statutory construction. Certain legal principles are widely recognized concerning statutory construction. Specifically:

A court's primary goal when interpreting a statute is to discern legislative intent first by examining the plain language of the statute. [*Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011)]. Courts construe the words in a statute in light of their ordinary meaning and their context within the statute as a whole. *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012). A court must give effect to every word, phrase, and clause, and avoid an interpretation that renders any part of a statute nugatory or surplusage. *Id*. Statutory provisions must also be read in the context of the entire act. *Driver*, 490 Mich at 247. It is presumed that the Legislature was aware of judicial interpretations of the existing law when passing legislation. *People v Likine*, 492 Mich 367, 398 n 61; 823 NW2d 50 (2012). When statutory language is clear and unambiguous, courts enforce the language as written. *Lafarge Midwest, Inc v Detroit*, 290 Mich App 240, 246-247; 801 NW2d 629 (2010). [*Lee v Smith*, 310 Mich App 507, 509; 871 NW2d 873 (2015).]

Further:

"Statutory language should be construed reasonably, keeping in mind the purpose of the act." *Twentieth Century Fox Home Entertainment, Inc v Dep't of Treasury*, 270 Mich App 539, 544; 716 NW2d 598 (2006) (quotation marks and citation omitted). The purpose of judicial statutory construction is to ascertain and give effect to the intent of the Legislature. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). In determining the Legislature's intent, we must first look to the language of the statute itself. *Id.* Moreover, when considering the correct interpretation, the statute must be read as a whole. *Id.* at 237. A statute must be read in conjunction with other relevant statutes to ensure that the legislative intent is correctly ascertained. *Walters v Leech*, 279 Mich App 707, 709-710; 761 NW2d 143 (2008). The statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme. *Id.* at 710; see also *Wayne Co v Auditor General*, 250 Mich 227, 233; 229 NW 911 (1930). The Legislature is presumed to be familiar with the rules of statutory construction and, when promulgating new laws, to be aware of the consequences of its use or omission of statutory language[.] *In re Complaint of Pelland Against Ameritech Michigan*, 254 Mich App 675, 687; 658 NW2d 849 (2003); *Lumley v Univ of Michigan Bd of Regents*, 215 Mich App 125, 129-130; 544 NW2d 692 (1996). [*In re MKK*, 286 Mich App 546, 556-557; 781 NW2d 132 (2009).]

MCL 37.1102 sets forth the purpose underlying the enactment of the PWDCRA as follows:

(1) The opportunity to obtain employment, housing, and other real estate and full and equal utilization of public accommodations, public services, and educational facilities without discrimination because of a disability is guaranteed by this act and is a civil right.

(2) Except as otherwise provided in article 2 [MCL 37.1201 *et seq.*], a person shall accommodate a person with a disability for purposes of employment, public accommodation, public service, education, or housing unless the person demonstrates that the accommodation would impose an undue hardship. [Footnote omitted.]

MCL 37.1402, which is part of article 4 of the PWDCRA, prohibits certain actions by an "educational institution." Specifically, MCL 37.1402 states as follows:

An educational institution shall not do any of the following:

(a) Discriminate in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids.

(b) Exclude, expel, limit, or otherwise discriminate against an individual seeking admission as a student or an individual enrolled as a student in the terms,

-6-

conditions, and privileges of the institution, because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution, or because of the use by an individual of adaptive devices or aids.

(c) Make or use a written or oral inquiry or form of application for admission that elicits or attempts to elicit information, or make or keep a record, concerning the disability of an applicant for admission for reasons contrary to the provisions or purposes of this act.

(d) Print or publish or cause to be printed or published a catalog or other notice or advertisement indicating a preference, limitation, specification, or discrimination based on the disability of an applicant that is unrelated to the applicant's ability to utilize and benefit from the institution or its services, or the use of adaptive devices or aids by an applicant for admission to the educational institution.

(e) Announce or follow a policy of denial or limitation through a quota or otherwise of educational opportunities of a group or its members because of a disability that is unrelated to the group or member's ability to utilize and benefit from the institution or its services, or because of the use by the members of a group or an individual in the group of adaptive devices or aids.

(f) Develop a curriculum or utilize textbooks and training or learning materials which promote or foster physical or mental stereotypes.

With regard to educational institutions, MCL 37.1103(d) defines "disability" to include:

(i) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

* * *

(C) For purposes of article 4, is unrelated to the individual's ability to utilize and benefit from educational opportunities, programs, and facilities at an educational institution.

MCL 37.1401 defines "educational institution" in the following manner:

As used in this article, "educational institution" *means a public or private institution or a separate school or department of a public or private institution*, includes an academy, college, elementary or secondary school, extension course, kindergarten, nursery, school system, school district, or university, and a business, nursing, professional, secretarial, technical, or vocational school, and includes an agent of an educational institution. [Emphasis added.]

Thus, the restrictions in MCL 37.1402 apply to defendant if defendant qualifies as an "educational institution" under MCL 37.1401.

Primarily, defendant argues that because the definition of an "educational institution" in MCL 37.1401 does not specifically refer to religious, denominational, or parochial schools, it does not encompass defendant's institutions. In support of this position, defendant identifies other statutes that include more specific references, arguing that omission of the words denominational, parochial and religious indicates a legislative intent to not include such organizations within the ambit of MCL 37.1401. Defendant also relies on caselaw indicating that "when enacting legislation, the Legislature is presumed to be fully aware of existing laws," as well as "familiar with the rules of statutory construction and, when promulgating new laws, to be aware of the consequences of its use or omission of statutory language[.]" *In re Medina*, 317 Mich App 219, 227-228; 894 NW2d 653 (2016) (citations and quotation marks omitted; alteration in original). We disagree with defendant's interpretation of the statutory language.

In our view, defendant's position does not adhere to broader rules of statutory construction. As noted, "[t]he primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature[,]" with "[t]he first criterion in determining intent [to be] the specific language of the statute." *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 101-102; 693 NW2d 170 (2005) (citations omitted). Importantly, "[t]he Legislature is presumed to have intended the meaning it plainly expressed." *Id.* at 102 (citation omitted). Consequently, "[n]othing will be read into a clear statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself." *Id.* (citation omitted). The identified and stated purpose of the PWDCRA is to afford opportunities for access to housing, employment and education "without discrimination because of a disability" and to mandate accommodations for individuals "with a disability" to fulfill this goal. MCL 37.1102(1) and (2). To achieve the stated purpose, MCL 37.1401 identifies an "educational institution" as including "a public or private institution or a separate school or department of a public or private institution," including "elementary or secondary school[s]." MCL 37.1401. Notably, defendant does not dispute its status as a "private" school; rather, it contends that omission from the statute of language specific to religious schools obviates the statute's application to defendant. According to *Black's Law Dictionary* (10th ed), a "private school" is defined as "[a] school maintained by private individuals, religious organizations, or corporations, funded, at least in part, by fees or tuition, and open only to pupils selected and admitted based on religious affiliations or other particular qualifications."[5] In addition, "private school" is defined in *Merriam-Webster's Collegiate Dictionary* (11th ed) as "a school that is established, conducted, and primarily supported by a nongovernmental agency." As such, the term "private school" is broadly construed to encompass schools, including religious-based schools, such as those run by defendant, a nongovernmental agency. Thus, we conclude that defendant's schools comprise "educational institution[s]" as contemplated by MCL 37.1401. Our determination is buttressed by related statutory provisions contained in the Civil Rights Act (CRA), MCL 37.2101 *et seq.*, and the private, denominational and parochial schools act, MCL 388.551 *et seq.*

---

[5] Where a word is not otherwise defined in the statute, this Court may turn to dictionary definitions for guidance in our task of interpreting the statute. *Kemp v Farm Bureau Gen Ins Co of Mich*, ___ Mich ___, ___; ___ NW2d ___ (2017) (Docket No. 151719); slip op at 8 n 27.

First addressing the CRA, MCL 37.2401 provides an almost identical definition of an "educational institution" to that set forth in the PWDCRA. Specifically, MCL 37.2401 states:

> As used in this article, "educational institution" means a public or private institution, or a separate school or department thereof, and includes an academy, college, elementary or secondary school, extension course, kindergarten, nursery, local school system, university, or a business, nursing, professional, secretarial, technical, or vocational school; and includes an agent of an educational institution.

Similar to the PWDCRA, the CRA also identifies prohibited practices of educational institutions to include the following:

> An educational institution shall not do any of the following:
>
> (a) Discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of religion, race, color, national origin, or sex.
>
> (b) Exclude, expel, limit, or otherwise discriminate against an individual seeking admission as a student or an individual enrolled as a student in the terms, conditions, or privileges of the institution, because of religion, race, color, national origin, or sex.
>
> (c) For purposes of admission only, make or use a written or oral inquiry or form of application that elicits or attempts to elicit information concerning the religion, race, color, national origin, age, sex, or marital status of a person, except as permitted by rule of the commission or as required by federal law, rule, or regulation, or pursuant to an affirmative action program.
>
> (d) Print or publish or cause to be printed or published a catalog, notice, or advertisement indicating a preference, limitation, specification, or discrimination based on the religion, race, color, national origin, or sex of an applicant for admission to the educational institution.
>
> (e) Announce or follow a policy of denial or limitation through a quota or otherwise of educational opportunities of a group or its members because of religion, race, color, national origin, or sex. [MCL 37.2402.]

Notably, the CRA provides an exception in MCL 37.2403, which states that "[t]he provisions of [MCL 37.2402] related to religion shall not apply to a religious educational institution or an educational institution operated, supervised, or controlled by a religious institution or organization which limits admission or gives preference to an applicant of the same religion." (Footnote omitted.) Thus, our review of the CRA's statutory language illustrates the broad and inclusive nature of the term "educational institution" that the Legislature clearly intended, unless an exception is specifically identified, such as in MCL 37.2403. Consequently, we conclude that the rules of statutory construction do not favor defendant's position within the related context of the CRA.

Similarly, a review of the private, denominational and parochial school act, MCL 388.551 *et seq.*, is contrary to defendant's interpretation of the PWDCRA. The stated purpose of this act is "to provide for the supervision of private, denominational and parochial schools; to provide the manner of securing funds in payment of the expense[s] of such supervision; to provide the qualifications of the teachers in such schools; and to provide for the endorsement of the provisions hereof." 1921 PA 302. Specifically, in accordance with MCL 388.552, "[a] private, denominational or parochial school within the meaning of this act *shall be any school* other than a public school giving instruction to children below the age of 16 years, in the first 8 grades as provided for the public schools of the state, such school not being under the exclusive supervision and control of the officials having charge of the public schools of the state." (Emphasis added.) While defendant suggests that the inclusion of the words "denominational or parochial school," in addition to the word "private," is consistent with its position regarding the meaning attributable to the omission of such wording in MCL 37.1401, it may just as easily be construed that the use of the words "private, denominational or parochial" serve to reference any non-public institution encompassed by MCL 388.552, and also emphasize the inclusiveness of the use of the term "private" in MCL 37.1401.

In support of its position, defendant also cites language in a variety of other statutes, which define or identify schools as religious, denominational, or parochial. Defendant specifically references the following statutory provisions:

MCL 333.7410(8)(b),[6] which is part of the Public Health Code, MCL 333.1101 *et seq.*, and defines "school property" to include "public, private, denominational, or parochial school" structures.

MCL 207.213, which is part of the motor carrier fuel tax act, MCL 207.211 *et seq.*, referring to the taxation of commercial motor vehicles and exempting those "owned by, or leased and operated by, a nonprofit private, parochial, or denominational, school. . . ."

MCL 207.1030(1)(c), which is also part of the motor carrier fuel tax act, referring to the exemption of motor fuel from taxation when "sold directly by the supplier to a nonprofit, private, parochial, or denominational school . . . and is used in a school bus owned . . . and operated by the educational institution. . . ."

MCL 257.627a(1)(b), which is part of the Michigan Vehicle Code, MCL 257.1 *et seq.*, defining a "school" to "mean[ ] an educational institution operated by a local school district or by a private, denominational, or parochial organization."

MCL 750.212a(2)(e), which is part of the Michigan Penal Code, MCL 750.1 *et seq.*, defining a "vulnerable target" to include "[a] public, private,

---

[6] Defendant refers to this statutory provision as MCL 333.7410(6)(b), which reflects its earlier iteration before its amendment by 2016 PA 128.

denominational, or parochial school offering developmental kindergarten, kindergarten, or any grade 1 through 12."

MCL 28.733(d), which is part of the Sex Offenders Registration Act, MCL 28.721 *et seq.*, defining a "school" to be "a public, private, denominational, or parochial school. . . ." [Footnote added.]

"Contrary to [defendant's] claim, use of the *in pari materia* canon of construction does not aid [defendant's] cause." *SBC Health Midwest, Inc v City of Kentwood*, ___ Mich ___, ___; 894 NW2d 535 (2017) (Docket No. 151524); slip op at 8. "*In pari materia* (or the related-statutes canon) provides that 'laws dealing with the same subject . . . should if possible be interpreted harmoniously.'" *Id.* at ___; slip op at 8 n 26 (citation omitted).[7] Predominantly, the *in pari materia* doctrine is inapplicable to the statutes defendant identifies because they do not "deal[ ] with the same subject" matter as the PWDCRA. *Id.* The doctrine does, however, support plaintiff's allegation regarding the applicability of the PWDCRA in this case when compared with similar provisions in the CRA, because both deal with civil rights, share a common purpose, and "form a part of one regulatory scheme[.]" *Measel v Auto Club Group Ins Co*, 314 Mich App 320, 329 n 7; 886 NW2d 193 (2016) (citation and quotation marks omitted). Thus, on the basis of the plain and unambiguous language of MCL 37.1401, we agree with plaintiff that defendant qualifies as an "educational institution" within the meaning of the PWDCRA.

We also note that the applicability of the PWDCRA to defendant is consistent with caselaw pertaining to standing and the PWDCRA, indicating:

[T]he PWDCRA requires that "a person shall accommodate a person with a disability for purposes of employment, public accommodation, public service, education, or housing unless the person demonstrates that the accommodation would impose an undue hardship." MCL 37.1102(2). Thus, when a person offers goods or services to the public, the PWDCRA imposes an affirmative duty to accommodate disabled persons if accommodation can be accomplished without undue hardship on the person offering the goods or services to the public. [*MOSES Inc v SEMCOG*, 270 Mich App 401, 421; 716 NW2d 278 (2006).]

---

[7] As an aside, we question whether use of the *in pari materia* doctrine is even of utility here, given its application as an "interpretive aid . . . [which] can only be utilized in a situation where the section of the statute under examination is itself ambiguous." *Tyler v Livonia Pub Sch*, 459 Mich 382, 392; 590 NW2d 560 (1999). "That not being the case here, [the use of] *in pari materia* techniques are inappropriate." *Id.* However, we address the application of the doctrine under the present facts where defendant urges this Court to use it as a tool in discerning the meaning of MCL 37.1401.

Clearly, however, a determination that defendant is subject to the PWDCRA does not resolve plaintiff's contention that defendant violated the PWDCRA by denying her admission to its high school. Thus, remand of that claim to the trial court is necessary to address and resolve that issue on the merits. We also take this opportunity to emphasize that the Michigan Supreme Court stated clearly that it will be "for the circuit court, in the first instance, to determine whether and to what extent the adjudication of the legal and factual issues presented by the plaintiff's claim would require the resolution of ecclesiastical questions (and thus deference to any answers the church has provided to those questions.)" *Winkler*, ___ Mich at ___; slip op at 14-15. In other words, when determining whether defendant's decision to deny plaintiff admission to its high school violated the PWDCRA, the trial court must remain cognizant of the well-settled legal principle that " 'the court may not substitute its opinion in lieu of that of the authorized tribunals of the church in ecclesiastical matters[.]' " *Id*. at ___; slip op at 9, citing *First Protestant Reformed Church v DeWolf*, 344 Mich 624, 631; 75 NW2d 19 (1956).

## III. CONCLUSION

We affirm the trial court's ruling that defendant meets the definition of an educational institution as set forth in MCL 37.1401, and remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood