*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHERRINE L. MCNEAL,

        Plaintiff-Appellee,

UNPUBLISHED
December 17, 2019

v

DORTCH ENTERPRISES, LLC, doing business as SUBWAY,

        Defendant-Appellant.

No. 344642
Wayne Circuit Court
LC No. 18-002436-CZ

Before: BECKERING, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

In this interlocutory appeal, defendant Dortch Enterprises, LLC, doing business as Subway, appeals by leave granted[1] the trial court's denial of defendant's motion for summary disposition under MCR 2.116(C)(8). For the reasons set forth in this opinion, we affirm in part and reverse in part.

## I. BACKGROUND

Plaintiff filed a complaint against defendant for, among other things, violation of the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, and intentional infliction of emotional distress (IIED).[2] Because defendant responded with a motion for summary disposition under MCR 2.116(C)(8) in lieu of an answer, the following factual allegations are drawn entirely from plaintiff's complaint.

---

[1] *McNeal v Dortch Enterprises, LLC*, unpublished order of the Court of Appeals, entered November 19, 2018.

[2] Plaintiff also alleged one count of negligent infliction of emotional distress and one count of ordinary negligence, but these counts were dismissed in the trial court by stipulation of the parties and are not at issue in this appeal.

Plaintiff entered one of defendant's restaurants during the afternoon, planning to make a purchase and use the restroom. Plaintiff suffers from "Asthma, Fibromyalgia, Degenerative Joint Disease, Rheumatoid Arthritis, Osteoarthritis, and Carpal Tunnel Syndrome," and she is regularly required to use a prescription medication that causes her to commonly experience "frequent urgent urination."

The complaint alleged that plaintiff's "need to use the bathroom became urgent" as she was entering defendant's restaurant, that the restroom was locked when she tried to use it, that she approached one of defendant's employees and asked to use the restroom, and that plaintiff "was refused and told that she couldn't use it until after she purchased food." According to the complaint, plaintiff informed the employee "that she had a disability and was taking medication that caused the need to use the bathroom urgently." Plaintiff further alleged that she "begged to use it immediately," "begged them repeatedly," and "was practically in tears and was begging to use the bathroom urgently." Plaintiff also alleged that she "promised that she would make a purchase as soon as she was done with the bathroom." The employees "refused each of [plaintiff's] pleas, and [plaintiff] was unable to hold her bladder any further." Plaintiff's "need to use the facility was so urgent that she didn't even have sufficient time to go outside to hide behind a tree or bush," and plaintiff urinated "by the door of the bathroom which was visible to other diners in the restaurant." She alleged that as "a direct and proximate result of [defendant's] refusal to offer [plaintiff] a reasonable accommodation of her disability, among other non-economic emotional distress damages, she suffered severe emotional distress, embarrassment, humiliation, and mortification of the highest order."

With respect to the PWDCRA claim, plaintiff alleged that defendant's restaurant was open to the public, that plaintiff was a person with a disability as defined by the PWDCRA, that plaintiff was entitled to full and equal utilization of defendant's restroom, and that defendant was legally obligated to provide plaintiff with a reasonable accommodation due to her disability. Plaintiff further alleged that the only necessary reasonable accommodation was for defendant to unlock the restroom before plaintiff made her purchase and that she had clearly informed defendant's employees both of her disability and her urgent need for the requested accommodation. Plaintiff maintained that such an accommodation would not have caused an undue hardship for defendant and that refusing to unlock the bathroom was an intentional violation of defendant's legal obligations under the PWDCRA.

With respect to the IIED claim, plaintiff alleged that (1) the "acts and omissions of [defendant's] employees constitute[d] extreme and outrageous conduct"; that (2) the "acts and omissions were intentional and reckless"; that (3) the "acts and omissions directly and proximately caused [plaintiff's] damages, including but not limited to severe emotional distress"; and that (4) defendant's "conduct went far beyond mere insult, indignity, annoyance, petty oppression, or otherwise trivial [conduct]" and "was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and should be regarded as atrocious and utterly intolerable in a civilized community." Finally, plaintiff alleged that "[w]hen the foregoing conduct is recited to an average member of the community, it will unequivocally arouse resentment against [defendant], and lead that community member to exclaim, 'Outrageous!' "

In response to plaintiff's complaint, defendant filed a motion for summary disposition under MCR 2.116(C)(8), arguing that defendant did not deny plaintiff access to the restroom, or full and equal enjoyment of the restaurant, because of plaintiff's alleged disability. Instead, defendant argued, plaintiff was denied access to the restroom because plaintiff did not make a purchase before attempting to use the customer restroom. Defendant construed plaintiff's complaint as alleging that defendant "denied her access to the restroom because she was not a paying customer; not because of an alleged disability." Defendant thus maintained that it did not violate the PWDCRA because its reason for denying plaintiff access to the restroom was nondiscriminatory. For purposes of its motion, defendant conceded that the restaurant was a place of public accommodation and that plaintiff had alleged that she had a disability as defined by the PWDCRA. Regarding plaintiff's IIED claim, defendant argued that refusing to permit plaintiff to use the restroom until after she made a purchase was not extreme and outrageous conduct, and defendant also argued that plaintiff had not alleged that this conduct was specifically intended to cause plaintiff severe emotional distress. The trial court concluded that plaintiff's complaint sufficiently pleaded a violation of the PWDCRA and IIED, and denied defendant's motion for summary disposition.

In an interlocutory appeal, defendant raises similar arguments that it raised in the trial court.

## II. STANDARD OF REVIEW

Our review of a trial court's summary disposition ruling, as well as any related issues of statutory interpretation, is de novo. *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009). MCR 2.116(C)(8) provides that summary disposition may be granted if "[t]he opposing party has failed to state a claim on which relief can be granted." "A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, ___; ___ NW2d ___ (2019) (Docket No. 157846); slip op at 6. In this context, "a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

When interpreting statutes, a court's primary objective is to determine the Legislature's intent as expressed in the language of the statute. *Winkler v Marist Fathers of Detroit, Inc (On Remand)*, 321 Mich App 436, 444; 909 NW2d 311 (2017). "Statutory provisions must also be read in the context of the entire act." *Id*. (quotation marks and citations omitted).

## III. PWDCRA

"MCL 37.1102 sets forth the purpose underlying the enactment of the PWDCRA . . . ." *Id*. at 446. This statute provides in relevant part as follows:

> (1) The opportunity to obtain . . . full and equal utilization of public accommodations . . . without discrimination because of a disability is guaranteed by this act and is a civil right.

(2) Except as otherwise provided in article 2,[3] a person shall accommodate a person with a disability for purposes of . . . public accommodation . . . unless the person demonstrates that the accommodation would impose an undue hardship. [MCL 37.1102.]

Additionally, MCL 37.1302(a) provides as follows:

Except where permitted by law, a person shall not:

(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids. [MCL 37.1302(a).]

In this case, plaintiff alleged that she had a disability in the form of experiencing frequent urgent urination and that she was denied the full and equal utilization of defendant's restaurant and restroom by defendant's failure to provide her with a reasonable accommodation in the form of unlocking the restroom before requiring her to make a food purchase. For purposes of this appeal, defendant does not dispute that plaintiff has alleged the existence of a disability under the PWDCRA[4] or that defendant is a place of public accommodation.[5] According to the complaint, defendant offers food for sale to the public with restroom access that is available to paying customers. The complaint also alleges that plaintiff would have made a purchase if she had been granted the accommodation of being able to use the restroom first.

"Once a plaintiff has demonstrated that he is able to benefit from services provided by a place of public accommodation and that he is being denied an 'equal opportunity' to do so because of a 'physical or mental characteristic,' the facility has a duty to accommodate the person." *Cebreco v Music Hall Ctr for the Performing Arts, Inc*, 219 Mich App 353, 359; 555 NW2d 862 (1996) (citations omitted). MCL 37.1103(*l*)(*ii*) indicates that "unrelated to the individual's ability" means that "with or without accommodation, an individual's disability does

---

[3] Article 2 involves issues of employment, see, e.g., MCL 37.1202, and is not implicated by the factual allegations of this case.

[4] For purposes of the claim at issue in this appeal, disability is defined as "[a] determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic . . . is unrelated to the individual's ability to utilize and benefit from a place of public accommodation or public service." MCL 37.1103(d)(*i*)(B).

[5] "Place of public accommodation" is defined to mean "a business, educational institution, refreshment, entertainment, recreation, health, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." MCL 37.1301(a).

not prevent the individual from . . . utilizing and benefiting from a place of public accommodation or public service." In this case, plaintiff's alleged disability would not have prevented her from utilizing and benefiting from the option to purchase food from defendant if she had been provided the accommodation of being permitted to use the restroom before making her purchase rather than, as was apparently the normal policy, being required to make her purchase first. Because plaintiff's allegations show an ability to benefit from defendant's offered services and that she did not have an equal opportunity to do so because of her disability, the allegations also establish, for purposes of evaluating a motion under MCR 2.116(C)(8) where plaintiff's allegations are accepted as true, *El-Khalil*, 504 Mich at ___; slip op at 6, that defendant had a duty to accommodate plaintiff, *Cebreco*, 219 Mich App at 359. Plaintiff further alleged that she was denied an equal opportunity to use defendant's restaurant and restroom as a result of defendant's refusal to accommodate plaintiff's disability. Thus, accepting all of plaintiff's factual allegations as true, *El-Khalil*, 504 Mich at ___; slip op at 6, plaintiff has alleged claim under the PWDCRA.

As this Court has previously explained,

> There is no question that the [PWDCRA[6]] imposes a potentially heavy obligation upon places of public accommodation with respect to handicapped individuals. Something more than merely equal treatment is required in order to satisfy the "equal opportunity" obligation of the [PWDCRA]. Such an obligation, however, is expressly set forth in the language of the statute and must be given reasonable meaning by this Court. The Legislature is presumed to have intended the meaning it plainly expressed.
>
> The [PWDCRA] requires a plaintiff to make a prima facie showing that the defendant has failed to accommodate his handicap. Once such a showing has been made, the burden of proof shifts to the defendant to show that the accommodation required would impose an "undue hardship." [*Cebreco*, 219 Mich App at 360 (citations omitted).]

Defendant's arguments are essentially premised on its underlying assertion characterizing plaintiff's complaint as alleging that defendant denied plaintiff access to the restroom because she was not a paying customer rather than because of her disability. Defendant further argues that "Plaintiff cannot prove that Defendant intentionally denied her of use of the restroom *because of* a disability." Additionally, defendant contends that it never denied plaintiff from entering its restaurant or making a purchase and that defendant "does not operate a public restroom."

However, defendant's arguments amount to an improper attempt to argue the strength of plaintiff's case and the evidence available to support it. Such arguments are well beyond the scope of review on a motion under MCR 2.116(C)(8). See *El-Khalil*, 504 Mich at ___; slip op at

---

[6] The PWDCRA was formerly called the Handicapper's Civil Rights Act. *Bachman v Swan Harbour Ass'n*, 252 Mich App 400, 402 n 1; 653 NW2d 415 (2002).

9 ("While the lack of an allegation can be fatal under MCR 2.116(C)(8), the lack of evidence in support of the allegation cannot . . . . The relative strength of the evidence offered by plaintiff and defendants will matter if the court is asked to decide whether the record contains a genuine issue of material fact. But that is only a question under MCR 2.116(C)(10)."). Michigan operates under a "notice pleading environment," where a pleading's primary function "is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position." *Dalley v Dykema Gossett*, 287 Mich App 296, 305; 788 NW2d 679 (2010) (quotation marks and citations omitted); see also MCR 2.111(B)(1) (requiring a complaint to include a "statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend."

Regarding plaintiff's PWDCRA claim, the trial court correctly understood the proper standard of review under MCR 2.116(C)(8), and properly found that plaintiff had filed a legally sufficient pleading so as to avoid summary disposition under MCR 2.116(C)(8). Finding no error in any aspect of the trial court's ruling relative to plaintiff's PWDCRA claim, we affirm.

IV. IIED

To establish a claim of IIED, a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004) (quotation marks and citation omitted). "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003) (quotation marks and citation omitted). "The test to determine whether a person's conduct was extreme and outrageous is whether recitation of the facts of the case to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Id*. (citation and some quotation marks omitted). "A defendant is not liable for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*. (quotation marks and citation omitted). "It is for the trial court to initially determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Hayley*, 262 Mich App at 577. "But where reasonable individuals may differ, it is for the jury to determine if the conduct was so extreme and outrageous as to permit recovery." *Id*.

Here, defendant's complained of conduct, which plaintiff alleges was extreme and outrageous, was that pursuant to a company policy, one of defendant's employees did not permit plaintiff to use the restroom before she made a purchase despite her repeated pleas and disclosure of her medical disability. While such conduct certainly reflects a lack of empathy, we cannot conclude from plaintiff's complaint that an employee's denial of restroom access prior to an in-store purchase constitutes, as a matter of law, extreme and outrageous conduct that is "beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Lewis*, 258 Mich App at 196 (quotation marks and citation omitted.) Also, recognizing that it is the trial court's duty to determine whether the defendant's conduct may be reasonably regard as so extreme as to permit recovery and recognizing that courts are bound by a standard which literally requires courts to make a finding that the conduct would lead us to

-6-

exclaim "Outrageous!" *Hayley*, 262 Mich App at 577, we cannot find from the allegations in plaintiff's complaint that denial of the use of a restroom without an in-store purchase rises to a level of extreme conduct that would reasonably cause use to exclaim: "Outrageous!" Hence, while we conclude that the facts alleged by plaintiff sufficiently state a claim under the PWDCRA, the enforcement of a policy that only paying customers may use the restroom does not rise to the level outrageous behavior necessary for a claim for IIED. *Lewis*, 258 Mich App at 196; *Hayley*, 262 Mich App at 577. Accordingly, plaintiff has failed to state a claim for IIED and the trial court erred by denying defendant's motion for summary disposition with respect to this claim.

Affirmed in part and reversed in part. We do not retain jurisdiction. No costs are awarded. MCR 7.219(A).

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Michael J. Kelly