PCS4LESS, LLC v STOCKTON

Docket No. 296870. Submitted March 2, 2011, at Lansing. Decided March
    8, 2011, at 9:05 a.m.

    PCS4LESS, LLC, and Wholesale Cellutions brought an action in the
    Washtenaw Circuit Court against Kyle Stockton, Jesse Lobb,
    Hilary Mason, Go Mobile, Inc., and others, alleging breach of
    contract, conversion, civil conspiracy, tortious interference with
    business relations, and violation of certain statutes as a result of
    defendants' alleged misappropriation of certain exclusive software
    from plaintiffs. Plaintiffs also sought a temporary restraining
    order (TRO) to prevent Lobb, Mason, and Go Mobile from using or
    destroying the purported trade secrets contained within the soft-
    ware. The court, Melinda Morris, J., granted a TRO, ordering
    Lobb, Mason, and Go Mobile to return any of plaintiffs' property in
    their possession and to not delete any computerized information
    taken from plaintiffs. When they did not produce the CNS soft-
    ware program sought by plaintiffs and claimed that they never had
    it, the court ordered Lobb, Mason, and Go Mobile to submit
    affidavits stating that Go Mobile and its employees never received,
    possessed, or used the CNS program and never sold a cell phone
    that contained the CNS program. Lobb and Mason submitted
    affidavits in which they stated that the information at issue was
    protected by their right against self-incrimination under the Fifth
    Amendment. Plaintiffs filed a motion to compel Lobb, Mason, and
    Go Mobile to comply with the court's order. The court granted
    plaintiffs' motion, ordering Lobb, Mason, and Go Mobile to pro-
    duce the CNS program or submit proper affidavits. The court then
    denied a motion for reconsideration. Lobb, Mason, and Go Mobile
    appealed by leave granted, contending that the court's orders
    denied their Fifth Amendment right against compelled self-
    incrimination.

        The Court of Appeals held:

        1. The Fifth Amendment operates not only in criminal trials, it
    also protects an individual from official questioning in any other
    proceeding, civil or criminal, formal or informal, where the an-
    swers might incriminate the individual in future criminal proceed-
    ings. The Fifth Amendment privilege protects an individual from

being forced to answer any question that would furnish a link in the chain of evidence needed to prosecute. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. A court should bar a claim of privilege under the Fifth Amendment only when the answer cannot possibly be incriminating.

2. It should have been clear to the trial court that possession of plaintiffs' CNS program by Lobb, Mason, or Go Mobile might lead to criminal sanctions against them. Answering the question whether they possess plaintiffs' trade secrets might force them to furnish a link in the chain of evidence needed to prosecute them.

3. Although the contents of a document may not be privileged, the act of producing the document may be privileged. The Fifth Amendment privilege may apply where a governmental subpoena compels the holder of a document to perform an act that may have testimonial aspects and an incriminating effect. Here, the act of producing the content of the CNS program would be an admission that Lobb, Mason, or Go Mobile possessed it. Under the circumstances of this case, such an admission would have testimonial value and would tend to incriminate them. The order for Lobb and Mason to either produce the program or submit affidavits that they do not possess it constituted compelled self-incrimination in violation of the Fifth Amendment privilege.

4. Organizations, such as a corporation, generally are not protected by the Fifth Amendment privilege. The custodian of an organization's records may not refuse to produce the records even if the records might incriminate the custodian personally.

5. A three-part test is used to determine whether the Fifth Amendment privilege may be used to prevent the production of an organization's documents: (1) Are the documents the records of the organization rather than those of the individual who has possession of them? (2) Does the custodian hold the records in a representative, rather than a personal, capacity? Assuming affirmative answers, in the case of a corporation, the inquiry is ended. In the case of noncorporate organizations, a third question arises: (3) Does the organization have an established institutional identity that is recognized as an entity apart from its individual members? Here, application of the test mandates the conclusion that the CNS program would be a record of Go Mobile and not of Lobb or Mason. Therefore, the Fifth Amendment does not prohibit the compelled production of the CNS program. Lobb and Mason cannot rely on the Fifth Amendment privilege to avoid producing the records of a

collective entity that are in their possession in a representative capacity, even if the records might incriminate them personally. The part of the order requiring Go Mobile to produce the required affidavit is affirmed. The part of the order requiring Lobb and Mason to produce affidavits is reversed, and the case is remanded to the trial court for the entry of an order consistent with the opinion of the Court of Appeals.

Affirmed in part, reversed in part, and remanded.

1. CONSTITUTIONAL LAW — SELF-INCRIMINATION — PRIVILEGE AGAINST SELF-INCRIMINATION.

The Fifth Amendment privilege against self-incrimination operates not only in criminal trials, but also protects an individual from official questioning in any other proceeding, civil or criminal, formal or informal, administrative or judicial, or investigatory or adjudicatory where the answers might incriminate the individual in future criminal proceedings; the privilege protects an individual from being forced to answer any question that would furnish a link in the chain of evidence needed to prosecute; to sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result; a court should bar a claim of privilege only when the individual's answer cannot possibly be incriminating (US Const, Am V).

2. CONSTITUTIONAL LAW — SELF-INCRIMINATION — PRIVILEGE AGAINST SELF-INCRIMINATION.

The Fifth Amendment privilege against self-incrimination may apply when a governmental subpoena compels the holder of a document to perform an act that may have testimonial aspects and an incriminating effect; the act of producing a document may be subject to the privilege even though the contents of the document are not privileged (US Const, Am V).

3. CONSTITUTIONAL LAW — SELF-INCRIMINATION — PRIVILEGE AGAINST SELF-INCRIMINATION.

The Fifth Amendment privilege against self-incrimination may not be asserted on behalf of another and cannot be utilized by or on behalf of any organization, such as a corporation; organizations with independent existence apart from their individual members may not assert the privilege; the custodian of an organization's records may not refuse to produce the records even if those records might incriminate the custodian personally (US Const, Am V).

*Jaffe Raitt Heuer & Weiss, P.C.* (by *Mark L. Kowalsky* and *Patrice S. Arend*), for Jesse Lobb, Hilary Mason, and Go Mobile, Inc.

Before: FITZGERALD, P.J., and O'CONNELL and METER, JJ.

O'CONNELL, J. This case arises from plaintiffs-appellees' claims that defendants-appellants misappropriated certain exclusive software from appellees. Appellants appeal by leave granted. We affirm in part and reverse in part, albeit for different reasons than those relied on by the trial court.[1]

As part of their business operations, appellees purchase Motorola cellular phones on the secondary market and then apply certain software that "unlocks" the phones for sale to vendors in the United States and other countries.[2] Appellees allege that they purchased the exclusive license for the two applicable software programs, Covenant and CNS. Appellees further allege that defendant Kyle Stockton transferred certain of their financial records and the cell phone unlocking software to appellant Jesse Lobb's computer or another computer of appellant Go Mobile, Inc. Appellees claim that the transferred information constitutes confidential and trade-secret information. Appellees brought this lawsuit seeking recovery under several theories and also requesting a temporary restraining order (TRO) to prevent appellants Go Mobile, Lobb, and Hilary Mason from using or destroying the purported trade secrets. The trial court granted the TRO and ordered appellants to return any of appellees' property

---

[1] *Hess v Cannon Twp*, 265 Mich App 582, 596; 696 NW2d 742 (2005).

[2] According to appellees' complaint, the software "unlock[s] the standard subsidy lock" or "unlock[s] the carrier not supported lock."

in their possession and to not delete any computerized information taken from appellees.

Because appellants did not produce the CNS program and claimed that they never had it, the trial court ordered appellants Lobb, Mason, and Go Mobile to submit affidavits that Go Mobile and its employees never received, possessed, or used the CNS program and never sold a cell phone containing the CNS program. Lobb and Mason submitted affidavits in which they stated that the information at issue was protected by their rights against self-incrimination under the Fifth Amendment. US Const, Am V. Appellees responded by filing a motion to compel Lobb, Mason, and Go Mobile to properly comply with the trial court's order.

The trial court granted appellees' motion, ordering appellants to either produce the CNS program or submit proper affidavits. The court held that appellants failed to provide the court with sufficient information to establish the testimonial and incriminating character of the requested affidavits. Although appellants informed the court that appellees had instigated a federal criminal investigation, the court noted that appellants had not described any direct contact with federal authorities, nor had appellants informed the court of any specific law under which they might be prosecuted. The court denied appellants' motion for reconsideration. On appeal, appellants argue that the trial court's orders denied their Fifth Amendment right against compelled self-incrimination.

This Court reviews a trial court's discovery orders, such as an order to compel, for an abuse of discretion. *Mercy Mt Clemens Corp v Auto Club Ins Ass'n*, 219 Mich App 46, 50, 55; 555 NW2d 871 (1996). An abuse of discretion occurs when the trial court chooses an out-

come falling outside a range of principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). Constitutional questions are questions of law, which we review de novo. *Mahaffey v Attorney General*, 222 Mich App 325, 334; 564 NW2d 104 (1997).

The first question is whether the Fifth Amendment privilege against self-incrimination is applicable in this situation.[3] The Fifth Amendment operates not only in criminal trials, it also protects an individual from official questioning in "any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *People v Wyngaard*, 462 Mich 659, 671-672; 614 NW2d 143 (2000) (quotation marks and citation omitted); see also *Kastigar v United States*, 406 US 441, 444; 92 S Ct 1653; 32 L Ed 2d 212 (1972) (stating that a witness may invoke the Fifth Amendment "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory"). This protection operates against the states through the Fourteenth Amendment. US Const, Am XIV. *Malloy v Hogan*, 378 US 1, 6; 84 S Ct 1489; 12 L Ed 2d 653 (1964).

The Fifth Amendment privilege protects an individual from being forced to answer any question that would " 'furnish a link in the chain of evidence needed to prosecute . . . .' " *Malloy*, 378 US at 11, quoting *Hoffman v United States*, 341 US 479, 486; 71 S Ct 814; 95 L Ed 1118 (1951). " 'To sustain the privilege, it need only be evident from the implications of the question, in

---

[3] The relevant aspect of the right against self-incrimination has not been interpreted differently under the Michigan Constitution than under the United States Constitution. *People v Cheatham*, 453 Mich 1, 10; 551 NW2d 355 (1996); *Paramount Pictures Corp v Miskinis*, 418 Mich 708, 725-726; 344 NW2d 788 (1984). Nor do appellants argue that the Michigan Constitution offers them greater protection.

the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.' " *Malloy*, 378 US at 11-12, quoting Hoffman, 341 US at 486-487. A court should bar a claim of privilege under the Fifth Amendment only when the answer cannot possibly be incriminating. *Id.* at 12.

In this case, appellants are essentially being asked whether they possess what appellees allege to be appellees' trade secrets. It is true that appellants did not originally provide the trial court with any specific statutes that such possession might violate, but it should have been clear that possession of appellees' CNS program might well lead to criminal sanctions against appellants. Thus, answering the question might force appellants to furnish a link in the chain of evidence needed to prosecute.

The trial court also ordered appellants to return the CNS program to appellees, if the program is in appellants' possession. In *United States v Doe*, 465 US 605, 612; 104 S Ct 1237; 79 L Ed 2d 552 (1984), the Court stated that "[a]lthough the contents of a document may not be privileged, the act of producing the document may be." Thus, where "[a] government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect," the Fifth Amendment privilege may apply. *Id.* Here, the act of producing the content of the program would be an admission that appellants possessed it. Under the circumstances of this case, such an admission would have significant testimonial value and would tend to incriminate appellants. See *id.* at 613. Therefore, the order for Mason and Lobb to either produce the program or submit affidavits that appellants do not

possess it constitutes compelled self-incrimination in violation of the Fifth Amendment privilege.

However, organizations generally are not protected by the privilege. *United States v White*, 322 US 694, 699; 64 S Ct 1248; 88 L Ed 1542 (1944); *Paramount Pictures Corp v Miskinis*, 418 Mich 708, 715; 344 NW2d 788 (1984), citing *White*, 322 US at 699 (providing that the Fifth Amendment privilege may not be asserted on behalf of another, and it "cannot be utilized by or on behalf of any organization, such as a corporation"). Appellants argue that this case presents an exception because forcing Go Mobile to reveal whether it possesses CNS would essentially reveal whether Lobb or Mason have possessed CNS. However, as our Supreme Court has clearly observed, the custodian of an organization's records may not refuse to produce the records even if those records might incriminate the custodian personally. *Paramount Pictures Corp*, 418 Mich at 715, citing *Wilson v United States*, 221 US 361; 31 S Ct 538; 55 L Ed 771 (1911).

Appellants cite *United States v Kordel*, 397 US 1, 8-9; 90 S Ct 763; 25 L Ed 2d 1 (1970), for the proposition that a corporation's action cannot prevail over an individual's Fifth Amendment rights. They read *Kordel* too broadly. *Kordel* holds that while an agent of a corporation may assert his or her Fifth Amendment privilege, the corporation cannot take advantage of that fact to avoid answering interrogatories addressed to the corporation. *Id.* at 7-8. The *Kordel* Court held that the corporation was obligated to appoint an agent who could answer the interrogatories without fear of self-incrimination and clearly stated that it would not permit the corporation to hide behind individuals' Fifth Amendment privileges. *Id.* at 8. Although it did not decide the point, the Court suggested that in a situation

where no agent of the corporation could answer the interrogatories without incriminating himself or herself, the appropriate remedy would be a protective order postponing discovery until any criminal action was settled. *Id.* at 8-9. However, later cases have not followed this dicta. See, e.g., *Bellis v United States*, 417 US 85; 94 S Ct 2179; 40 L Ed 2d 678 (1974); *Paramount Pictures Corp*, 418 Mich 708.

Citing *Doe*, 465 US 605, appellants also argue that small companies may have Fifth Amendment rights where the only persons who could testify on behalf of the companies or produce requested documents are the same individuals whose personal Fifth Amendment rights are at stake. In *Doe*, the Supreme Court concluded that the owner of a sole proprietorship acts in a personal rather than a representative capacity, thereby allowing the owner to assert the owner's personal Fifth Amendment privilege over his or her business documents. *Id.* at 608, 617. However, Go Mobile is a Pennsylvania corporation, and appellants do not suggest that Go Mobile has only one owner. Moreover, the *Doe* Court noted that collective entities, meaning organizations with independent existence apart from their individual members, may not assert the Fifth Amendment privilege. *Id.* at 608 n 4, citing *Bellis*, 417 US at 92.

However, appellants' position is supported to some extent by dicta from *Bellis*. Though the *Bellis* Court held that independent entities may not take advantage of the privilege, it stated that the general rule might not apply in cases involving small family partnerships. *Bellis*, 417 US at 101. The key distinction recognized in *Bellis* is whether the person possessing the organization's records holds them in a personal or a representative capacity. *Id.* If the former, the records are protected; if the latter, they are not.

In *Paramount Pictures Corp,* our Supreme Court considered the federal precedent and identified a three-part test to determine whether the Fifth Amendment privilege may be used to prevent the production of an organization's documents:

> 1. Are the documents the records of the organization rather than those of the individual who has possession of them?
>
> 2. Does the custodian hold the records in a representative, rather than a personal, capacity?
>
> Assuming affirmative answers, in the case of a corporation the inquiry is ended because of the special nature of the corporate form and the state's reservation of visitatorial powers over corporations. In the case of non-corporate organizations, however, a third question arises:
>
> 3. Does the organization have an established institutional identity which is recognized as an entity apart from its individual members? [*Paramount Pictures Corp*, 418 Mich at 720 (citations omitted).]

The Court in *Paramount Pictures Corp* also considered the reference in *Bellis* to small family partnerships and concluded that the *Bellis* language "merely was meant to restate that the papers required to be produced must not be the private and personal papers of the individuals held in a personal capacity." *Id.* at 725.

Applying the *Paramount Pictures Corp* test to the current case, we conclude that the CNS program would be a record of Go Mobile and not of the individual appellants. The program, if any of the appellants have it, would be used to further Go Mobile's business. For the same reason, it appears that if either of the individual appellants have the CNS program, they hold it in a representative, rather than a personal, capacity. Therefore, under *Paramount Pictures Corp*, the Fifth Amendment does not prohibit the compelled production

of the CNS program. The individual appellants "cannot rely upon the privilege to avoid producing the records of a collective entity which are in [their] possession in a representative capacity, even if these records might incriminate [them] personally." *Bellis*, 417 US at 88.

We affirm the part of the trial court's order that required Go Mobile to produce the required affidavit. However, with respect to Mason and Lobb, that part of the order is reversed. We remand for entry of an order comporting with these instructions. We do not retain jurisdiction.