*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RENEE SWAIN,

Plaintiff-Appellant,

v

MICHAEL MORSE, MARK ZARKIN, and
STEVEN LELLIS ON THE GREEN, LLC,

Defendants-Appellees.

FOR PUBLICATION
June 11, 2020
9:05 a.m.

No. 346850
Oakland Circuit Court
LC No. 2017-158765-CZ

Before: BECKERING, P.J., AND FORT HOOD AND SHAPIRO, JJ.

PER CURIAM.

Plaintiff sued defendant Michael Morse, alleging sexual assault and battery, intentional infliction of emotional distress (IIED), and additional counts arising from an alleged incident at defendant Lellis On the Green, LLC (Lelli's), a restaurant owned and operated by defendant Mark Zarkin. Plaintiff appeals the trial court's opinion and order dismissing her verified complaint as a discovery sanction for untruthful deposition testimony. She also challenges the trial court's earlier opinions and orders granting Zarkin and Lelli's summary disposition and Morse partial summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). For the reasons stated in this opinion, we affirm the grant of summary disposition to Zarkin and Lelli's, but reverse the dismissal of plaintiff's complaint against Morse as a discovery sanction and the grant of summary disposition to Morse on the IIED claim.

## I. BACKGROUND

This case stems from plaintiff and Morse's April 6, 2017 meeting at Lelli's. According to plaintiff,[1] she was having dinner with a group of friends when Morse approached the table and initiated conversation. The group then began taking pictures and plaintiff offered to pose for a

---

[1] In reviewing a motion for summary disposition under MCR 2.116(C)(10), we must view the evidence in the light most favorable to plaintiff, the nonmoving party. See *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

photograph with Morse.  The photograph was taken by Zarkin, the restaurant's owner and Morse's friend.   Later in the evening, plaintiff asked to take a "selfie" with Morse and he agreed to do so.  Plaintiff testified that she complained about glare and focus issues on her phone and Morse suggested that they go to a different area of the restaurant to take the picture.  According to plaintiff, after they took the photograph in this "secluded" area, Morse put his arm around her and grabbed her left breast through her clothing, squeezed it, and asked, "Is that better?"  Morse denies that he grabbed or touched plaintiff's breast.

About a week later, plaintiff reported her allegations to the Farmington Hills police, and defendants learned of the accusation through the police. According to plaintiff, one of her friends who was at the dinner told her that Zarkin wanted to arrange a meeting to discuss what happened.  Plaintiff ultimately agreed to meet with Morse  at Lelli's on May 6, 2017, and, on her request, the police arranged for plaintiff to wear a recording device for the meeting.  A transcript of the recording shows that Morse apologized to plaintiff during their meeting, but never admitted or denied touching her breast.  Plaintiff said she forgave Morse and gave him a hug.  Plaintiff gave the recording to the police and eventually the prosecutor decided not to bring charges.

On May 15, 2017, plaintiff filed a verified complaint alleging sexual assault and battery against Morse, premises liability against Zarkin and Lelli's, and, as to all defendants, IIED,[2] civil conspiracy, negligence, gross negligence, and wanton and willful misconduct.  Immediately, an issue arose regarding the scope of Morse's deposition.  Plaintiff sought to depose Morse about other allegations of sexual misconduct against him, and Morse sought and obtained a protective order barring plaintiff's counsel from asking Morse questions about acts unrelated to plaintiff.  The order did not definitively foreclose discovery or admission of such evidence as it allowed plaintiff to submit an offer of proof relating to other acts evidence.  Plaintiff did so, filing a motion captioned, "motion for offer of proof regarding MRE 404(b)."  The motion set forth other allegations of sexual misconduct against Morse, and the trial court denied the motion without prejudice.  Plaintiff sought interlocutory appeal of the denial of her motion for 404(b) discovery and on February 20, 2018, we granted leave.[3]  On August 9, 2018, the Court reversed the trial court's denial of plaintiff's motion for discovery of 404(b) evidence, vacated the underlying protective order, and remanded for further proceedings.[4]

We granted a stay of the lower court proceedings while plaintiff's prior appeal was pending.[5]  On remand, the trial court heard oral arguments on defendants' pending motions for

---

[2] Plaintiff also claimed negligent infliction of emotional distress but later stipulated to the dismissal of that claim.

[3] *Swain v Morse*, unpublished order of the Court of Appeals, entered February 20, 2018 (Docket No. 342410).

[4] *Swain v Morse*, unpublished per curiam opinion of the Court of Appeals, issued August 9, 2018 (Docket No. 342410).

[5] *Swain v Morse*, unpublished order of the Court of Appeals, entered March 8, 2018 (Docket No. 342410).

-2-

summary disposition and sanctions. On November 20, 2018, the trial court issued an opinion and order granting Zarkin and Lelli's summary disposition of all counts. In a separate opinion and order, the court granted Morse summary disposition of plaintiff's claims for IIED, civil conspiracy, and negligence, but concluded that there were questions of fact precluding summary disposition on plaintiff's claim for sexual assault and that she could proceed with the claim of gross negligence and willful and wanton misconduct to support a claim of exemplary damages.

However, on December 5, 2018, the trial court issued an opinion and order dismissing plaintiff's entire complaint against Morse as a sanction for discovery misconduct.[6] Defendants' motions seeking sanctions was based on plaintiff's deposition testimony regarding the amount and duration of financial support she had received from her friend Ken Koza. Morse asserts that Koza's financial support is relevant to whether he assaulted plaintiff because the support ceased shortly before plaintiff filed suit and so demonstrates a financial motivation for plaintiff to have fabricated her claim. Morse asserted that plaintiff committed perjury on those matters because she testified that Koza had made deposits of $10,000 into her bank account for only three months, while her bank records showed that she received $10,000 per month from Koza from February 2, 2015 through May of 2016. Also, while plaintiff originally estimated that payments from Koza stopped in March or May of 2017, she later testified that the monthly payments stopped at the end of 2016, which was inconsistent with her bank records that showed the regular payments did not stop until May 2017 as she originally estimated.

Based on the bank records, the court found that plaintiff "lied under oath" at her deposition. The trial court concluded that plaintiff's false statements warranted dismissal because: (1) they were not the product of mistake or misunderstanding; (2) she did not supplement or correct her deposition testimony; and (3) the statements were material. This appeal followed.

## II. DISMISSAL FOR UNTRUTHFUL DEPOSITION TESTIMONY

Plaintiff argues that the trial court abused its discretion by dismissing her complaint against Morse as a discovery sanction. We agree for several reasons.[7] First, plaintiff's deposition testimony did not violate any court rule or order, which typically occurs before the harsh sanction of dismissal is imposed. Second, plaintiff's testimony did not undermine the integrity of the judicial process because defendant was able to obtain contradictory evidence through discovery and plaintiff's veracity can be addressed at trial through impeachment. Third, though the issue of

---

[6] On the same day, the court entered an order denying Zarkin and Lellis's motion for sanctions.

[7] We review a trial court's decision regarding discovery sanctions for an abuse of discretion. *Traxler v Ford Motor Co*, 227 Mich App 276, 286; 576 NW2d 398 (1998). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable outcomes. *PCS4LESS, LLC v Stockton*, 291 Mich App 672, 676; 806 NW2d 353 (2011). A trial court's factual findings are reviewed for clear error. *Traxler*, 227 Mich App at 282. "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*.

Koza's financial support is relevant, it is not dispositive and Morse was not substantially prejudiced by plaintiff's testimony.

## A. COURT RULES

"Dismissal is a drastic step that should be taken cautiously." *Brenner v Kolk*, 226 Mich App 149, 163; 573 NW2d 65 (1997). Severe sanctions such as default or dismissal are predicated on a flagrant or wanton refusal to facilitate discovery that typically involves repeated violations of a court order. See e.g., *Bass v Combs,* 238 Mich App 16, 26; 604 NW2d 727 (1999) (affirming dismissal when the plaintiff violated "several court orders over a fifteen-month period"), overruled on other grounds by *Dimmit & Owen Fin Inc v Deloitte & Touche LLC*, 481 Mich 618, 627-628; 752 NW2d 37 (2008); *Mink v Masters*, 204 Mich App 242, 244; 514 NW2d 235 (1994) (affirming a default judgment when the defendant twice failed to comply with the trial court's order compelling discovery). Cf. *Frankenmuth Mut Ins Co v ACO, Inc*, 193 Mich App 389, 399; 484 NW2d 718 (1992) (holding that default judgment for failure to respond to interrogatories was an abuse of discretion "in the absence of an order or some other compelling circumstance . . . .").

The cases relied on by the trial court involved violation of orders or court rules and repeated efforts to stall discovery. None concerned allegations that a party lied at deposition, let alone a court finding to that effect. For instance, in *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 89; 618 NW2d 66 (2000), the trial court entered a default judgment against the defendant as a sanction for failing to appear for his deposition in violation of a court order compelling his attendance. This Court affirmed, finding that "[t]he record reveals defendant's deliberate noncompliance with court rules and a discovery order in addition to what the trial court evidently viewed as an attempt to mislead the court and disrupt the progression of the lawsuit." *Id.* Similarly, in *LaCourse v Gupta*, 181 Mich App 293, 294-296; 448 NW2d 827 (1989), the plaintiff's case was dismissed after she repeatedly failed to disclose her expert witnesses and never supplemented her response despite a court order to do so. This Court found that dismissal was warranted because "[t]here were only two weeks left before the scheduled trial date, [and] there was a lengthy history of failure to comply with court rules . . . ." *Id.* at 297.

Unlike those cases, plaintiff's deposition testimony did not violate *any* court rule or order, and so sanctions were not authorized by MCR 2.504(B)(1) for noncompliance with a rule or order. Contrary to the trial court's opinion, deposition testimony is not subject to the duty to supplement discovery responses under MCR 2.302(E). At the time this case was decided, MCR 2.302(E) allowed the imposition of sanctions when a party failed to supplement a response to a "request for discovery" that the party knows was "incorrect when made." See MCR 2.302(E)(1)(b)(*i*) and (2) (2018). But a deposition is *not* a response to a request for discovery. A response to a discovery request is something that is capable of being signed by the attorney. See MCR 2.302(G)(1). Also, the rules refer to responses and depositions as distinct items. See MCR 2.302(H)(1) ("Unless a

particular rule requires filing of discovery materials, requests, *responses*, *depositions*, and other discovery materials may not be filed with the court except as follows[.]") (emphasis added).[8]

The court rules governing depositions provide for sanctions in only one circumstance: "[O]n motion, the court may impose an appropriate sanction—including the reasonable expenses and attorney fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent or otherwise violates this rule." MCR 2.306(D)(2). Also, MCR 2.313(B)(1) allows for sanctions based on the deponent's failure to follow a court order, stating, "If a deponent fails to be sworn or to answer a question after being directed to do so by a court in the county or district in which the deposition is being taken, the failure may be considered a contempt of court." Neither rule allows for sanctions based on the substance of the deponent's testimony. That the court rules contemplate sanctions for deposition-related misconduct, but not false testimony, strongly suggests that the Supreme Court does not view sanctions as an appropriate response to false deposition testimony.

The lack of a court rule addressing sanctions for that misconduct is understandable when one considers that there are several existing disincentives for untruthful deposition testimony. First and foremost, a party's credibility can be impeached at trial with deposition testimony. Also, a deponent may be charged with perjury for willfully false testimony on a material fact. See *In re Contempt of Henry*, 282 Mich App 656, 677-678; 765 NW2d 44 (2009). Further, if it is ultimately determined that the complaint lacked evidentiary support other than the plaintiff's false statements, the prevailing party may seek costs and attorney fees under MCL 600.2591(a)(*ii*) for a frivolous action on the grounds that "[t]he party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true."

## B. INHERENT AUTHORITY

The lack of authority to impose sanctions for untruthful deposition testimony under the court rules raises the question of whether a court may do so under its inherent authority to sanction litigant misconduct. "[T]rial courts possess the inherent authority to sanction litigants and their counsel, including the power to dismiss an action." *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006). "This power is not governed so much by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. "Because these inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995) (cleaned up).

There are few cases of record examining the scope of misconduct that would justify dismissal or default in the absence of a court order or rule violation. No Michigan appellate court has held that the court's inherent authority extends so far as to dismiss a case based on the court's conclusion that a party did not tell the truth in deposition. The cases that have provided for an

---

[8] Consistent with this interpretation, effective January 1, 2020, the rule governing the duty to supplement now expressly applies to initial disclosures and response to interrogatories, requests for production and admissions, i.e., it does not apply to depositions. See MCR 2.302(1)(a) (2020).

"inherent authority" dismissal differ substantially from the type of misconduct for which the court imposed the ultimate sanction in this case.

The two leading cases on a court's inherent authority to sanction litigant misconduct are *Cummings*, 210 Mich App 249, and *Maldonado*, 476 Mich 372. In *Cummings*, the plaintiff threatened three of the defendant's witnesses with physical injury and committed acts of vandalism against them. *Cummings*, 210 Mich at 251. The trial court dismissed the complaint with prejudice, and on appeal the plaintiff argued that the court lacked authority under court rules and statutes to impose sanctions for the misconduct. *Id*. This Court determined that the trial court had inherent authority to sanction litigant misconduct and affirmed the dismissal:

> We do not believe the trial court's decision to dismiss the action was the result of unrestrained discretion or imprudence. The court clearly acknowledged the harshness of the sanction and balanced it against the gravity of plaintiff's misconduct. The nature of the threats and the actual vandalism committed permanently deprived the court of the opportunity to hear the testimony of witnesses who would be able to testify openly and without fear. [*Id*. at 253.]

Like *Cummings, Maldonado* also concerned a blatant disregard of the judicial process. In that case, after the trial court ruled that evidence of a prior conviction was inadmissible, the plaintiff and her counsel "engaged in a concerted and wide-ranging campaign in the weeks before various scheduled trial dates to publicize the details of the inadmissible evidence through the mass media and other available means." *Maldonado*, 476 Mich at 392. The trial court dismissed plaintiff's case because "plaintiff and her attorneys repeatedly and intentionally publicized inadmissible evidence so as to taint the potential jury pool, deny defendants a fair trial, and frustrate the due administration of justice." *Id*. at 376. In holding that the trial court did not abuse its inherent authority to impose sanctions, the Supreme Court relied on plaintiff and her counsel's continued misconduct even after "the trial court twice explicitly discussed the improper conduct with plaintiff's counsel and warned everyone about the consequences of continuing misconduct." *Id*. at 394. Moreover, counsel's conduct "violated numerous rules of professional conduct." *Id*. at 396. In sum, dismissal was justified because the misconduct tainted the potential jury pool, denied the defendant a fair trial, and so "was directly aimed at frustrating the due administration of justice." See *id*. at 398.

*Cummings* and *Maldonado* concerned serious misconduct that went to the ability of the court to assure a fair trial. Witness intimidation and jury tampering are "administration of justice" issues because they make it impossible for a jury to make a reliable decision. In contrast, untruthful deposition testimony does not threaten the integrity of the judicial *system*. A witness can be impeached at trial and the jury can consider whether a witness was lying in making its credibility determination. In fact, the jury's verdict will in many, if not most, cases be an implicit finding that one of the parties has given untruthful testimony. It is therefore doubtful whether dismissal for intentionally false deposition testimony is ever appropriate. Indeed, rather than protecting the judicial process, permitting judges to dismiss cases for false deposition testimony would be a fundamental change and could itself undermine the integrity of the judicial system that has always relied on the factfinder for credibility determinations. See e.g., *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 512; 892 NW2d 467 (2016) ("It is for the trier of fact to assess credibility; a jury may choose to credit or discredit any testimony.").

Even if dismissal for intentionally false testimony could fall within a trial court's inherent authority, the testimony in this case would not justify that penalty. Before dismissing a case, a trial court should consider the following factors:

> (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice. [*Vicencio*, 211 Mich App at 507.]

A trial court must give "careful consideration to the factors involved and consider[] all of its options in determining what sanction [is] just and proper in the context of the case before it." *Duray Dev, LLC v Perrin*, 288 Mich App 143, 165; 792 NW2d 749 (2010) (holding that the trial court abused its discretion by barring presentation of a witnesses as a sanction for not filing a witness list as required by the scheduling order).

Regarding factor (1), plaintiff argues that she did not *deliberately* give false testimony.[9] We conclude that the trial court did not clearly err in finding that she did, but her testimony is more ambiguous than the court's opinion suggests. For instance, plaintiff testified that she had difficulty recalling the amount and dates of funds provided by Koza: "I know he put money in my account but I don't know exactly what he did at certain times." Later, however, she was "positive" that Koza did not deposit $10,000 in monthly income to her bank account beginning in February or March 2015, stating, "I'm not denying that he did it maybe for three maybe for three months, but after that, I—yes, I am denying that." This testimony cannot be squared with the bank records that showed that she received $10,000 in monthly payments from Koza from February 2015 through May 2016. Testifying nearly two years later in February 2018, it is certainly possible that plaintiff's testimony was due to a faulty memory, as she suggests.[10] The court also found that plaintiff received several additional payments from Koza in 2015—in the amounts of $20,000, $4,000, $22,000, and $15,000 in addition to the $10,000 monthly payments.

---

[9] We decline plaintiff's novel invitation to adopt the standards and caselaw governing judicial misconduct because there is no basis to apply that authority to a discovery-misconduct case. We also reject plaintiff's argument to consider Morse's purported discovery misconduct in determining whether dismissal of her case was an appropriate sanction. Plaintiff has not cited authority holding or indicating that it is appropriate to consider the other party's allege misconduct in reviewing discovery sanctions. Further, she chose not to appeal the trial court's order denying her motion for sanctions against Morse and so that matter is not before us.

[10] Notably, although the question was directed at $10,000 monthly payments, other questions were directed at a subsequent reduction to $5,000 monthly payments, which plaintiff claimed not to recall. Plaintiff's bank records show that after receiving the monthly $10,000 payments as described above, she received a $5,000 payment on June 29, 2016, and then $5,000 in monthly payments from August 2016 to May 2017, making the concept of monthly payments much harder to forget.

As to when Koza stopped being a source of income, plaintiff initially answered, "I think it was May. May or March." Morse concedes that this was a truthful answer because plaintiff's bank records show that Koza's regular deposits stopped in May 2017. But when plaintiff was later asked when Koza's support came to an end, she answered:

> *A.* Last year. I can't remember exactly—I don't remember.
>
> *Q.* All right.
>
> [Plaintiff's counsel]: When you say "last year," what year are you talking about? Because—
>
> BY [Morse's counsel]:
>
> *Q.* 2017?
>
> *A.* I am talking about '17.
>
> And it was—oh, no, no, no. That's—I would have to say '16. November of '16 or December of '16.

It is questionable whether plaintiff intentionally gave the wrong end-date for Koza's support considering that she initially provided an accurate answer and later answered, "I can't remember exactly," before changing her answer to November or December 2016. Plaintiff may have been "back peddling" when she changed her answer, as Morse argues, or she may have honestly believed, upon further reflection, that the payments stopped prior to 2017. However, the trial court also found that there was a $3,500 deposit from Koza in November 2017, just a few weeks before plaintiff's deposition. While it could be argued that plaintiff's deposition testimony was referring to the regular monthly income that she was receiving from Koza, and thus the $3,500 deposit in November 2017 is not contradictory, plaintiff does not make that contention. Accordingly, the trial court did not clearly err by finding an intentional misstatement on the duration of Koza's support.

That said, the fact that there is some ambiguity and equivocation in plaintiff's answers counsels against dismissal, and it also demonstrates why courts should be hesitant to impose sanctions based upon a finding that the deponent intentionally made false statements. Issues of credibility and intent and generally left to the trier of fact. See *Pemberton v Dharmani*, 207 Mich App 522, 529 n 1; 525 NW2d 497 (1994) ("[S]ummary disposition is inappropriate where questions of motive, intention or other conditions of mind are material issues."); *Goldsmith v Moskowitz*, 74 Mich App 506, 518; 254 NW2d 561 (1977) ("In cases involving state of mind, such as the scienter requirement in fraud, summary judgment will be appropriate in relatively few instances because it will be difficult to foreclose a genuine dispute over this factual question.") (quotation marks and citation omitted).

*Vicencio* factors (2) and (5) do not provide any support for dismissal as there has been no allegation that plaintiff or her counsel failed to comply with court orders. Similarly, for factor (4), Morse has not alleged a history of deliberate delay. Accordingly, those factors weigh against dismissal.

Factor (3) also weighs against dismissal because Morse was not substantially prejudiced by plaintiff's testimony. Plaintiff's financial condition does not concern her prima facie case but rather relates to a defense based on motive. The testimony was material in that it was relevant to this defense, but it nonetheless related to an ancillary matter. More important than materiality, Morse's counsel's questioning at oral argument makes clear that the defense already had accurate information regarding the amount and duration of Koza's payments because the questioning is consistent with the bank records. Further, at the time of plaintiff's deposition on January 5, 2018, there was still over a month remaining in discovery. Plaintiff admitted that Koza had deposited funds in her bank account, and defendants had ample time to depose Koza and obtain all the relevant records. Significantly, this is not a case where the plaintiff wholly concealed a material fact and thereby prevented further discovery concerning it. Providing false, even intentionally false, testimony on a known and readily discoverable matter does not hinder the judicial *process* so as to justify dismissal.

Perhaps recognizing the lack of actual prejudice, Morse emphasizes that "[t]he trial court has a gate-keeping obligation, when such misconduct occurs, to impose sanctions that will not only deter the misconduct *but also serve as a deterrent to other litigants*." *Maldonado*, 476 Mich at 392 (emphasis added). However, deterrence can be accomplished through a lesser sanction than dismissal. We are also mindful that permitting dismissal or default as a sanction for deposition testimony would invite parties to bait or lead the opposing party into making false or contradictory statements at deposition, a result plainly at odds with the purpose of discovery. See *People v Burwick*, 450 Mich 281, 298; 537 NW2d 813 (1995) ("A primary purpose of discovery is to enhance the reliability of the fact-finding process by eliminating distortions attributable to gamesmanship."). If we were to affirm dismissal in this case, it would open the door for motions to dismiss as a sanction for false deposition testimony in many, if not nearly all, contested cases. Ultimately, the determination of credibility would become one for the court rather than one for the jury and would result in a fundamental change to the judicial process.

Regarding factor (6), Morse focuses on plaintiff's failure to correct her testimony with a post-deposition affidavit and her attempt to quash the subpoena for her bank records. However, as discussed, plaintiff had no duty to supplement her deposition testimony under MCR 2.302(E). After plaintiff's deposition, Morse served a subpoena on plaintiff's bank and plaintiff brought an emergency motion to quash the subpoena, which the trial court denied. We agree with plaintiff that her motion to quash was not improper and that she had a good-faith argument that the bank records were not relevant to this case. And after the motion was denied, there was no need for plaintiff to file a supplemental affidavit because the bank records were the best evidence of Koza's deposits. Plaintiff was also aware that Morse would be deposing Koza.

As to the last factor, the trial court concluded—without elaboration or discussion of alternative remedies—that a lesser sanction than dismissal "would be insufficient to remedy the damage." For the reasons discussed, we fail to see how Morse was substantially damaged by plaintiff's testimony. Her statements regarding Koza's support were ancillary to her allegations and easily disproved by Morse, i.e., there was little prejudice. Further, her testimony did not threaten the integrity of the judicial process because she can be impeached at trial. Finally, considering that this was the only instance of misconduct found by the trial court and that plaintiff did not violate any court rule or order, it cannot be said that she flagrantly refused to facilitate discovery. Thus, the hallmarks of the type of misconduct warranting dismissal are not present in

this case. For these reasons, the interests of justice would be better served by a lesser sanction than dismissal, and the trial court abused its discretion in concluding otherwise.

## III. CIVIL CONSPIRACY

Plaintiff next argues that the trial court erred in granting defendants summary disposition of her civil conspiracy claim. We disagree.[11]

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins Co v Columbia Cas Ins Co*, 194 Mich App 300, 313; 486 NW2d 351 (1992).[12] Plaintiff alleges that Morse and Zarkin conspired to coerce her into withdrawing her criminal complaint and not pursuing civil litigation. Plaintiff specifically relies on defendants' conduct at the May 6, 2017 meeting where Morse apologized to her and Zarkin commended her for forgiving Morse. Plaintiff claims that defendants' conduct violated MCL 750.122, i.e., the "witness anti-intimidation statute." *Kimmelman v Heath Downs Mgmt Ltd*, 278 Mich App 569, 577; 753 NW2d 265 (2008). The trial court granted summary disposition because it found no evidence of a conspiracy and that defendants' alleged conduct did not violate MCL 750.122.

We disagree with the trial court that plaintiff's deposition testimony indicating her belief that there was not a conspiracy between Morse and Zarkin is dispositive. While plaintiff's testimony was certainly damaging to her claim, she was not given the legal definition of conspiracy (as a jury would be). Further, as a lay witness, plaintiff is not qualified to testify to the legal effect of Morse and Zarkin's actions. See MRE 701. Viewing the evidence in a light most favorable to plaintiff, there is a question of fact whether Morse and Zarkin acted together to convince plaintiff to withdraw the criminal complaint against Morse. However, plaintiff does not merely allege that Morse and Zarkin sought to convince or encourage her to withdraw the complaint. Rather, she maintains that defendants *coerced* her into doing so. Plaintiff is uniquely qualified to testify

---

[11] A trial court's decision on a motion for summary disposition is reviewed de novo. *Spiek v Dep't of Transp,* 456 Mich 331, 337; 572 NW2d 201 (1998). In evaluating a motion under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties, and view that evidence in the light most favorable to the nonmoving party to determine if a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden,* 461 Mich at 118-120. Summary disposition should be granted if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995).

[12] Liability does not arise from a civil conspiracy alone; "rather, it is necessary to prove a separate, actionable tort." *Advocacy Organization for Patient & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003) (quotation marks and citation omitted). See also *Franks v Franks*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 343290); slip op at 20. Here, plaintiff does not seek to hold defendants liable for a separate tort under a theory of civil conspiracy but rather seeks relief for a civil conspiracy in and of itself. But defendants did not seek summary disposition on this ground, and we will not address it.

whether she felt coerced or pressured at the meeting, and she denied that she did. While coercion is not an element of conspiracy, it is the underlying premise to plaintiff's claim, and so summary disposition was appropriate given the lack of factual dispute on that matter. Also, while plaintiff argues that summary disposition was premature because discovery had not been completed, she does not explain how the additional deposition testimony from defendants would support her claims.[13] See *Meisner v Law Group PC Weston Downs Condo Ass'n*, 321 Mich App 702, 724; 909 NW2d 890 (2017).

In addition, the trial court correctly concluded that the alleged conspiracy did not violate MCL 750.122 as alleged. That statute provides in pertinent part:

> (1) A person shall not give, offer to give, or promise anything of value to an individual for any of the following purposes:
>
> (a) To discourage any individual from attending a present or future official proceeding as a witness, testifying at a present or future official proceeding, or giving information at a present or future official proceeding.
>
> (b) To influence any individual's testimony at a present or future official proceeding.
>
> (c) To encourage any individual to avoid legal process, to withhold testimony, or to testify falsely in a present or future official proceeding. [MCL 750.122(1).]

Plaintiff specifically argues that Zarkin offered her something of value and encouraged her to avoid legal process in violation of MCL 750.122(1)(c) by offering her and family "free dinners" and also by applying "moral pressure." The trial court correctly ruled that merely encouraging someone to not pursue criminal and civil charges does not constitute encouraging someone to avoid "legal process." Statutory language must be interpreted based on its ordinary meaning and the context in which it is used. *Brickey v McCarver*, 323 Mich App 639, 643; 919 NW2d 412 (2018). "The unifying theme among [MCL 750.122's] subsections is an attempt to identify and criminalize the many ways individuals can prevent or attempt to prevent a witness from appearing and providing truthful information in some sort of official proceeding, as defined in subsection 12(a)."[14] *People v Greene*, 255 Mich App 426, 438; 661 NW2d 616 (2003). Multiple sections of the Michigan Penal Code, MCL 750.1 *et seq*., define "legal process" as:

---

[13] Plaintiff twice deposed Morse and had the opportunity to depose Zarkin. After Morse's second deposition, plaintiff filed a motion to continue the deposition and to compel answers to certain questions. The trial court denied the motion as moot following dismissal.

[14] An official proceeding is defined "as a proceeding heard before a legislative, judicial, administrative, or other governmental agency or official authorized to hear evidence under oath, including a referee, prosecuting attorney, hearing examiner, commissioner, notary, or other person taking testimony or deposition in that proceeding." MCL 750.122(12)(a).

-11-

[A] summons, complaint, pleading, writ, warrant, injunction, notice, subpoena, lien, order, or other document issued or entered by or on behalf of a court or lawful tribunal or lawfully filed with or recorded by a governmental agency that is used as a means of exercising or acquiring jurisdiction over a person or property, to assert or give notice of a legal claim against a person or property, or to direct persons to take or refrain from an action. [MCL 750.368(9)(b); MCL 750.217c(7)(b).]

Viewed in context, the anti-tampering statute refers to encouraging an individual to avoid service of process for testimony at an official proceeding. Plaintiff cites no authority for her expansive view that this statute makes it a crime to merely encourage an individual to withdraw a criminal complaint or discourage the filing of suit. Accordingly, she fails to establish that Morse and Zarkin were acting in concert to commit an unlawful purpose.

## IV. IIED

Plaintiff also argues that the trial erred in granting summary disposition of her claim for IIED. We affirm the grant of summary disposition to Zarkin and Lelli's but reverse as to Morse.

"To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004) (quotation marks and citation omitted). "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003) (quotation marks and citation omitted). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Doe v Mills*, 212 Mich App 73, 91; 536 NW2d 824 (1995). The test is whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Robert v Auto-Owners Ins Co*, 422 Mich 594, 602-603; 374 NW2d 905 (1985) (quotation marks and citation omitted).

The trial court initially determines "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Hayley*, 262 Mich App at 577. "But where reasonable individuals may differ, it is for the jury to determine if the conduct was so extreme and outrageous as to permit recovery." *Id*. Plaintiff's IIED claim is primarily based on the alleged sexual touching. She alleges that Morse grabbing her breast was extreme and outrageous conduct and that Zarkin committed IIED by failing to supervise Morse. The trial court granted Zarkin and Lelli's summary disposition because they did not have a duty to supervise Morse, and there is no evidence they knew that Morse was about to commit the alleged assault. As to Morse, the court concluded that "[e]ven taking plaintiff's version of the facts as true, a single touch to her breast does not amount to extreme and outrageous conduct."

We agree with the trial court that plaintiff failed to state a claim of IIED against Zarkin and Lelli's. Plaintiff has effectively abandoned her allegation that Zarkin had a duty to supervise Morse by failing to support it with legal authority. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). In any event, allowing patrons to take a photograph in a "secluded" area of the

restaurant is not extreme and outrageous conduct. Plaintiff also argues that the conduct underlying her civil conspiracy claim supports her IIED claim. As discussed, plaintiff agreed that she was not coerced or pressured at the meeting where Morse apologized to her and Zarkin made remarks commending her for forgiving Morse. Zarkin also indicated at the meeting that it would hurt his restaurant if the allegations became public and that he would provide plaintiff and her family with a free dinner. That is not extreme and outrageous behavior even if the purpose was to dissuade plaintiff from pressing criminal charges. Thus, Morse and Zarkin's conduct at the meeting does not support an IIED claim.

The remaining question then is whether plaintiff may proceed with a claim of IIED against Morse based on the alleged grabbing and squeezing of her breast. We are not aware of any published opinion addressing whether an alleged sexual assault involving a single touch to the breast through clothing meets the IIED threshold. Regarding sexual remarks, we have held that a supervisor's proposition of sex to an employee was not sufficiently outrageous for purposes of IIED. See *Trudeau v Fisher Body Division*, 168 Mich App 14, 20; 423 NW2d 592 (1988). On the other hand, we determined that a circulation of a cartoon depicting the plaintiff and a male coworker in a "sexually compromising position" set forth a prima facie case. See *Linebaugh v Sheraton Mich Corp*, 198 Mich App 335, 338, 342-343; 497 NW2d 585 NW2d 585 (1993). And in *Lewis*, 258 Mich App at 197-198, we held that secretly recording consensual sexual activity, even though the recordings were not published or distributed, presented a factual question for the jury to resolve.

It is safe to say that an unwanted sexual touching is typically more extreme conduct than sexual remarks or drawings. And while Morse's conduct as described by plaintiff was not as outrageous as secretly recording sex acts, she does allege unwanted sexual contact. Certain factors suggest that the conduct, assuming it occurred, fails to meet the high threshold for IIED. Specifically, the alleged assault was a single outside-the-clothing breast squeeze after Morse took a "selfie" with plaintiff. On the other hand, plaintiff had just met Morse and they were in a public place with other people nearby. Thus, the conduct, if it occurred, would have been particularly brash and unexpected. We are also mindful that community standards regarding sexual misconduct have changed significantly over the past few years. We therefore conclude that an average member of today's community could find the alleged conduct in this case outrageous. In sum, we conclude that reasonable minds may differ as to whether the alleged conduct was extreme and outrageous and therefore the trial court erred in granting Morse summary disposition of plaintiff's IIED claim.

## V. REASSIGNMENT ON REMAND

Finally, plaintiff asks that we reassign this case to a different judge on remand. We decline to do so.

"The general concern when deciding whether to remand to a different trial judge is whether the appearance of justice will be better served if another judge presides over the case." *Bayati v Bayati*, 264 Mich App 595, 602-603; 691 NW2d 812 (2004). "In deciding whether to remand to a different judge, this Court considers whether the original judge would have difficulty in putting aside previously expressed views or findings, whether reassignment is advisable to preserve the appearance of justice, and whether reassignment will not entail excessive waste or duplication."

*In re Bibi Guardianship*, 315 Mich App 323, 337; 890 NW2d 387 (2016). "A trial judge is presumed to be fair and impartial, and any litigant who would challenge this presumption bears a heavy burden to prove otherwise." *In re Susser Estate*, 254 Mich App 232, 237; 657 NW2d 147 (2002).

Plaintiff argues that the trial court made statements indicating a bias in favor of defendants. Most of the statements identified by plaintiff pertain to the timing of discovery. For instance, the trial court stated that it previously bifurcated discovery into a liability and damages phase because, if the alleged assault did not occur, the court wanted to confine the case "before we were going to get far flung and try this to the press and potentially, you know, destroy reputations and hope that, you know, an action for abuse of process could clean it up afterwards." The court also stated at one point that it wanted to decide whether Zarkin and Lelli's were entitled to summary disposition before any further proceedings "because if in fact they have no business having been in this case, they need to get out before any more damage is done to them." Plaintiff apparently takes issue with court's concern for defendants' reputations and protecting them from unnecessary "damage." However, the court's decision to consider unnecessary expense and burden to the parties was proper and does not show a bias toward defendants. See MCR 2.302(C) ("[T]he court in which the action is pending may issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .").

Further, we are not persuaded that the trial court showed preferential treatment in favor of defendants. Plaintiff highlights that the court denied her motions for default and sanctions against Morse and asks us to compare those rulings with the court's decision to dismiss her case. But plaintiff did not appeal the denial of her motions, and we therefore see no basis to review the trial court's rulings or the underlying allegations. Further, an adverse ruling is not a sufficient reason for disqualification or reassignment, even if that ruling is later reversed. *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009). Therefore, we are also unpersuaded by plaintiff's arguments relating to the trial court's MRE 404(b) ruling and the court's statements regarding this Court's reversal of that ruling on remand. Moreover, considering the case's lengthy history, we conclude that reassignment would entail excessive and duplicative costs.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Karen M. Fort Hood
/s/ Douglas B. Shapiro

-14-